UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

|  |  |  |
|---|---|---|
| PLAINTIFFS ROBERT B. HALLIDAY III, Individually, AND PATRICIA M. HALLIDAY, Individually and Collectively as Next of Kin and as Personal Representatives of their Son, Fort Bliss Whistleblower Soldier RICHARD HALLIDAY, Deceased | § § § § § § § § § | CIVIL ACTION NO. EP-26-CV-1205-KC |
| *Plaintiffs,* | § § § |  |
| v. | § § § |  |
| GREG ABBOTT, , et al., | § § § |  |
| *Defendants.* | § § § § § |  |

## PLAINTIFFS' LIST OF DEFENDANTS AND FACTS IN SUPPORT OF PRIMA FACIE CAUSES OF ACTION

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW PLAINTIFFS ROBERT B HALLIDAY III AND PATRICIA M HALLIDAY, individually and as the surviving Gold Star parents and personal representatives of their deceased son, United States Army Specialist Richard Halliday, and respectfully file this list of defendants and facts in compliance with this Court's Order dated June 4, 2026. Due to the complexity of the case, Plaintiffs are providing the top 31 defendants and respectfully request additional time to provide information regarding any lesser-involved or related defendants in this matter.

**1. Defendant: Dallas W. Hart  (Primary Suspect – Platoon Leader, 1/43 ADA, Fort Bliss)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. Wrongful Death and Survival Action *(Texas Civil Practice & Remedies Code § 71.001 et seq.).*

1

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. *42 U.S.C. § 1983* / Bivens – Deprivation of Constitutional Rights (First Amendment retaliation and Fifth/Fourteenth Amendment due process violations).

4. Obstruction of Justice *(18 U.S.C. §§ 1503, 1505, 1512; Texas Penal Code § 36.06).*

5. Abuse of Corpse *(Texas Penal Code § 42.08).*

6. Intentional Infliction of Emotional Distress (Texas law).

7. Civil Conspiracy.

8. Harassment and Witness Intimidation *(Texas Penal Code § 42.07; 18 U.S.C. § 1512).*

9. Theft and Receipt of Stolen Property *(Texas Penal Code § 31.03).*

SPECIFIC ACTIONS BY DEFENDANT HART THAT GIVE RISE TO LIABILITY

Defendant Dallas W. Hart served as SPC Richard Halliday's platoon leader in the 1st Battalion, 43rd Air Defense Artillery Regiment (1/43 ADA) at Fort Bliss. As platoon leader, Hart held a position of direct authority, influence, and control over Richard's assignments, movements, and well-being.

Used his position of authority to engage in severe and ongoing retaliation against Richard for his protected whistleblower activity exposing cartel-linked criminal trafficking, child sexual exploitation, and other serious criminal activity on Fort Bliss including the base's ties to the Walmart mass shooting.

Created and maintained a hostile command climate within the platoon designed to punish, isolate, and silence Richard for reporting criminal networks operating on the installation.

Is identified as the prime suspect in the murder of SPC Richard Halliday. Evidence indicates that Richard was forcibly removed from his barracks in July 2020 and murdered in the arms room on Fort Bliss.

Participated in the planning, coordination, or execution of Richard's murder, using his knowledge of Richard's routines and his position of authority to facilitate the circumstances that led to his death.

The Department of Defense officially designated Richard's death as "in the line of duty" in January 2025, confirming he was murdered in retaliation for his whistleblower activity.

After Richard's murder, Defendant Hart participated in the theft, dismemberment, and trafficking of Richard Halliday's remains across the international border to Ciudad Juárez, Mexico, for disposal through the same cross-border funeral home and crematorium network connected to the

2

criminal enterprise (including the Plenitud Crematorium cover-up).

The Halliday family remains without their son's remains to this day.

After Richard's disappearance and murder, items belonging to Richard, including his credit cards and personal property, were found in the possession of Hart or individuals closely associated with him. This constitutes possession of stolen property from a murder victim and further evidence of Hart's direct involvement in the crime and obstruction of justice.

Acted in concert with other members of the criminal enterprise, including Tavita Nuusa (former CID agent whose credentials were revoked), Michael Ruggiero (Richard's former First Sergeant), Leilani Hart (his mother), and Amber Chase's group (including individuals connected to Michael P. Gonzales), to obstruct the investigation, conceal evidence, intimidate witnesses, and prevent the recovery of Richard's remains.

Conspired with Amber Chase and her associated network to harass, intimidate, and obstruct the Gold Star Family of Richard Halliday in the years following the murder.

Participated in and benefited from the ongoing campaign of retaliation, harassment, and obstruction directed at the Halliday Family, including the use of fabricated social media accounts, impersonation, dissemination of disinformation, and graphic threats intended to silence their advocacy and prevent them from obtaining justice.

Through his actions and his alignment with the criminal enterprise, Defendant Hart has contributed to the multi-year cover-up that has denied the Halliday family their son's remains, meaningful accountability, and access to justice for over 2,100 days.

Through his position of authority and his actions before, during, and after the murder of SPC Richard Halliday, Defendant Hart deprived Richard Halliday of his constitutional rights, as follows:

(a)    First Amendment – Defendant Hart retaliated against Richard Halliday for engaging in protected whistleblower activity by reporting sex trafficking, weapons trafficking, and related criminal conduct connected to Fort Bliss. This retaliation violated Richard Halliday's rights to free speech and to petition the government for redress of grievances.

(b)    Fifth and Fourteenth Amendments – Defendant Hart failed to protect Richard Halliday from known threats and participated in, and fostered, a command climate that directly contributed to his murder. This conduct deprived Richard Halliday of his rights to due process and equal protection under the law.

3

Defendant Hart's conduct was extreme and outrageous and has caused severe emotional distress to Richard Halliday's Gold Star parents, Robert B. Halliday III and Patricia M. Halliday.

**2. Defendant: Tavita V. Nuusa  (Former CID Agent, Fort Bliss, Texas – Credentials Revoked for Misconduct)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through investigative misconduct, witness intimidation, and obstruction of justice).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice and witness tampering).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday and the subsequent concealment of his remains through deliberate obstruction and protection of the criminal enterprise.

4. *18 U.S.C. § 1512* – Obstruction of Justice and Witness Tampering.

5. *18 U.S.C. §§ 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

7. Official Misconduct / Breach of Public Trust – Using CID authority to suppress evidence, leak sensitive information, and protect prime suspects in the murder of a U.S. Army whistleblower.

8. Obstruction of Justice and Witness Tampering – Direct participation in efforts to silence witnesses, conceal evidence, and traffic remains.

SPECIFIC ACTIONS BY DEFENDANT NUUSA THAT GIVE RISE TO LIABILITY

Defendant Tavita V. Nuusa served as a CID Agent assigned to Fort Bliss, Texas, during the period relevant to the disappearance and murder of SPC Richard Halliday. As a CID Agent, he had access to sensitive investigative files, forensic evidence, and witness statements, all of which he was duty-bound to protect and pursue in good faith.

Defendant Nuusa's CID credentials were later revoked for documented misconduct. Despite this revocation, he continued to exert influence over the Halliday investigation, which constituted a

knowing continuation of obstruction.

Defendant Nuusa maintained a close personal and romantic relationship with Leilani Hart, the mother of prime suspect Dallas W. Hart. This relationship created a clear and irreconcilable conflict of interest that he never disclosed. He used his position as a CID Agent to provide Leilani Hart and the Hart family network with unauthorized access to confidential investigative information.

Defendant Nuusa engaged in the unauthorized disclosure of sensitive case information to Leilani Hart and the Hart family. These leaks enabled Dallas Hart and his associates to obstruct the investigation, evade accountability, and coordinate witness intimidation.

Defendant Nuusa participated in or facilitated the suppression of critical evidence in the Richard Halliday investigation, including:

(a)    Failing to properly document or preserve forensic evidence that could have identified Richard's murderers and the trafficking of his remains;

(b)    Suppressing evidence of Richard Halliday's whistleblower complaints regarding cartel-linked trafficking, child exploitation, and criminal activity on Fort Bliss; and

(c)    Concealing the identity, associations, and significance of Nidal Tahsin Baem, who confessed on CCTV that Richard was dead and that his remains had been found in Juárez.

Defendant Nuusa is implicated in the submission of a tampered INTERPOL missing person alert in which Dallas Hart's face was superimposed over Richard Halliday's photograph. This act of evidence tampering misdirected international law enforcement and obstructed the search for Richard's remains.

Defendant Nuusa participated in a campaign of witness intimidation and retaliation against individuals who sought to expose the truth about Richard Halliday's murder, including targeting Judge Roger Rodriguez and coordinating with Leilani Hart and the Hart family network to harass and intimidate the Halliday family.

Through his actions and omissions, Defendant Tavita Nuusa provided material assistance to the broader criminal enterprise responsible for Richard Halliday's murder and the subsequent cover-up. This enterprise includes his brother, Solomona Nuusa (Mortuary Operations Officer), Nidal Tahsin Baem, LTC Bradford Bugado, Dallas W. Hart, and the Perches Funeral Homes network.

Through the above actions and omissions, Defendant Tavita V. Nuusa deprived Richard Halliday and his family of their constitutional rights, including:

5

(a) First Amendment Rights — Retaliating against Richard Halliday for engaging in protected whistleblower activity and against his family for petitioning the government for redress of grievances.

(b) Fifth and Fourteenth Amendment Rights — Denying due process and equal protection by suppressing evidence and protecting prime suspects in the murder investigation.

(c) Right of Access to the Courts — Obstructing the investigation and thereby preventing the Halliday family from obtaining justice and the return of their son's remains.

Defendant Tavita V. Nuusa, through his actions as a CID Agent and his associations with compromised personnel, knowingly conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity that included obstruction of justice, witness tampering, and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

### 3. Defendant: Leilani Hart  (Also known as Leilani S. Efaraimo / Leilani Fatupaito)
CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity)

2. Wrongful Death and Survival Action (Texas law)

3. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (to the extent acting in concert with state actors)

4. Obstruction of Justice *(Texas Penal Code § 36.06 and federal law)*

5. Civil Conspiracy

6. Aiding and Abetting the criminal enterprise responsible for the murder and cover-up of Richard Halliday

SPECIFIC ACTIONS BY DEFENDANT HART THAT GIVE RISE TO LIABILITY

Defendant Leilani Hart is the mother of Dallas W. Hart, the prime suspect in the murder of Fort Bliss whistleblower Soldier Richard Halliday and Richard's former platoon leader. She actively participated in the protection of her son and the broader criminal enterprise responsible for Richard's murder and the cross-border trafficking of his remains to the Plenitud crematorium in Juárez, Mexico.

On July 22, 2020, Defendant Leilani Hart executed a sworn affidavit (notarized in El Paso

6

County) in which she detailed extreme child sexual abuse committed by her husband, James Courtney Hart Sr., against their sons Dallas and Texas Hart, as well as other children. She described incestuous acts performed on each other in the presence of their father, who watched, and the sexual abuse of a seven-year-old boy who was left in her care. This demonstrates her direct, contemporaneous knowledge of horrific criminal conduct occurring inside her own household during the same period Richard Halliday was exposing child exploitation and trafficking on Fort Bliss.

On October 16, 2020, Defendant Leilani Hart submitted a formal written complaint to the Office of the El Paso Attorney General, Department of Veterans Affairs, and Office of the Inspector General, alleging that her husband was a predator who raped their children between the ages of seven and fifteen and used his government position to forge signatures and illegally process documents for personal advantage.

Despite possessing direct knowledge of severe, ongoing child sexual exploitation and criminal conduct within her own family, Defendant Leilani Hart chose to actively participate in the cover-up of Richard Halliday's murder and the protection of Dallas Hart rather than cooperating with law enforcement or military investigators.

Defendant Leilani Hart received and acted upon leaks of sensitive investigative information from compromised Fort Bliss CID Agent Tavita Nuusa (whose credentials were later revoked), allowing her and Dallas Hart to obstruct the Halliday investigation and shield members of the criminal enterprise.

Defendant Leilani Hart participated in a coordinated campaign to impersonate the Halliday family through fake social media accounts and websites (along with Dallas Hart, Bob Moore of El Paso Matters, Nick Brown-Bell Nofzinger, and Amber Chase). These accounts were used to harass, threaten, and intimidate the Halliday family while spreading false narratives to obstruct the investigation into Richard's murder.

Defendant Leilani Hart participated in the fabrication and dissemination of false stories to media outlets, including KTSM and El Paso Matters, designed to attack and discredit Judge Roger Rodriguez, the whistleblower who reported interference and leaks in the investigation into Richard Halliday's murder and the Walmart mass shooting case.

Defendant Leilani Hart worked in concert with members of the broader enterprise (including individuals in the Mormon-faction network such as Rosa Maria Valdez Garcia and Felix Valenzuela) to target the Halliday family, interfere with the investigation, and protect Dallas Hart and the criminal

networks operating at and around Fort Bliss.

Defendant Leilani Hart targeted and harassed the Halliday family after criminal complaints were filed against Dallas Hart and others for their involvement in trafficking and Richard's murder, further contributing to the pattern of witness intimidation and obstruction of justice.

Defendant Leilani Hart, with assistance from Judge Marlene Gonzalez, obtained an unlawful name change to Leilani S. Efaraimo on or about April 25, 2024, despite the Halliday family expressly notifying the court of her status as a convicted felon with a documented history of filing false police reports, fraud, and protective order violations. This name change was granted to help her evade scrutiny and accountability in the Halliday case.

Defendant Leilani Hart's actions formed part of a larger pattern of conduct designed to shield those responsible for Richard Halliday's murder, obstruct the investigation into cartel-linked trafficking and child exploitation at Fort Bliss, and prevent accountability for the criminal enterprise.

By her active participation in the cover-up, witness intimidation, media attacks on whistleblowers, and protection of Dallas Hart, Defendant Leilani Hart directly contributed to the prolonged suffering of the Halliday family and the continued operation of the criminal enterprise that murdered a U.S. Army soldier for exposing crimes on a major American military installation.

### 4. Defendant: Nidal Tahsin Baem (Individually)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas Civil Practice & Remedies Code *§ 71.001 et seq.*).

4. Obstruction of Justice *(18 U.S.C. § 1512).*

5. Impersonation of a Federal Officer *(18 U.S.C. § 912).*

6. Civil Conspiracy *(42 U.S.C. § 1983 & 18 U.S.C. § 371).*

7. Official Oppression *(Texas Penal Code § 39.03).*

8. Money Laundering *(18 U.S.C. § 1956).*

9. Abuse of Corpse *(Texas Penal Code § 42.08).*

8

10. Tampering with Government Records / Evidence *(Texas Penal Code § 37.10; 18 U.S.C. § 1519)*.

## SPECIFIC ACTIONS BY DEFENDANT BAEM THAT GIVE RISE TO LIABILITY

On or about October 26, 2020, Defendant Baem entered a Dollar General store in El Paso, falsely identified himself as an FBI agent, and told the cashier that Richard Halliday was dead and his remains had been found in Juárez, Mexico—captured on CCTV and corroborated by witness testimony. The cashier testified that Baem stated: *"He is dead—shhh. The FBI found his body in Juárez. Take down the flyers. This is a secret."*

Defendant Baem concealed his knowledge of Richard's death from the Halliday family while the compromised Fort Bliss command was actively telling the family that Richard was only "missing."

Defendant Baem knew the specific location of Richard's remains (Juárez) but remained silent while the Halliday family desperately searched for answers.

Defendant Baem impersonated an FBI agent in violation of *18 U.S.C. § 912*, falsely assuming the authority of federal law enforcement to further the enterprise's objectives and obstruct the investigation.

Defendant Baem maintained a direct family relationship to Fort Bliss command through his son-in-law, LTC Bradford Bugado, G3 of the 32nd Army Air and Missile Defense Command at Fort Bliss—the exact unit where Richard Halliday served and was murdered.

LTC Bugado served as G3 (Operations Officer) for the 32nd AAMDC, responsible for missile defense across CENTCOM, including Camp Arifjan, Kuwait. This placed Bugado directly in Richard's chain of command at the time of his whistleblowing and murder.

Defendant Baem used this relationship to access sensitive military information, influence command decisions regarding the Halliday investigation, and coordinate with compromised command elements protecting cartel interests.

On or about March 31, 2025, Defendant Baem was caught attempting to flee to Kuwait with approximately $44,893.40 in stolen cash, demonstrating consciousness of guilt and active participation in the financial operations of the enterprise.

Court records show Baem fraudulently took the money from Western Frontier Trading LLC, deposited it into his personal First National Bank account (ending in 6271), and booked a one-way flight to Kuwait. A judge immediately froze the account and issued a temporary injunction.

Defendant Baem operated Western Frontier Trading LLC—a government supply defense

contractor involved in multi-million-dollar arms deals and ammo procurement.

A CBP Borstar Team investigative report (File No. 00533-2020-cid014-015042) identified Western Frontier Trading as engaging in suspicious transactions with foreign entities, including "Golden Dragon Inc." in China, in violation of CBP regulations.

The US Air Force Office of Special Investigations conducted an audit of Western Frontier Trading's contract and found that the company had submitted false documentation and invoices, and had failed to properly disclose its ownership structure.

Defendant Baem's business operations align with Project Cassandra findings, which documented Hezbollah laundering drug money by buying American used cars and shipping them to Africa. Baem has run at least five used car dealerships in El Paso since 1995—the exact tradecraft documented by Project Cassandra.

Defendant Baem's Western Frontier Trading LLC submitted a $3,000,000 ammunition bid to the El Paso Police Department in June 2020—while Richard Halliday was being murdered.

Defendant Baem obstructed justice by:

(a)    Falsely impersonating an FBI agent to demand removal of missing person flyers.

(b)    Concealing knowledge of Richard's death from law enforcement, investigators, and the Halliday family.

(c)    Attempting to flee the country with stolen cash.

(d)    Providing false information to Mexican authorities regarding Richard's whereabouts.

(e)    Using his family connections to influence Fort Bliss command decisions and suppress the investigation.

Defendant Baem is directly related to:

(a)    Texas Ranger Gustavo Sanchez – assigned to the Halliday case, created an irreconcilable conflict of interest.

(b)    EPISD Police Chief Manuel Chavira – cartel-connected law enforcement official.

(c)    Executed cartel members Willie Moya and Arturo Alba – connected to Luis Rene Diaz.

(d)    Luis Rene Diaz – pleaded guilty in federal court, then became Chief of Staff to DA Bill Hicks.

Defendant Baem's long-term residence at 7633 Paiute Way, El Paso, TX, shared with Isis

10

Chavira and Jesus Maria Hernandez for over 23 years, served as a hub for enterprise members including Maria F. Baem, Layla Aida Baem-Bugado, and Naira Florencia Baem.

Defendant Baem and Isis Chavira are directly linked to PO Box 920175, a central nexus used by the Baem family, EMBA Enterprises (Raul Arizpe), and other members of the enterprise.

Defendant Baem's daughter, Nadia J. Baem, is very close friends with Michael Maldonado**— the brother of **Frances Maldonado Engelbaum (former DA Trial Team Chief and current judicial candidate). Nadia Baem has publicly posted photographs with Michael Maldonado on social media.

Defendant Baem's daughter, Layla Aida Baem, is married to LTC Bradford Bugado, directly connecting Baem to AUSA Mathew Engelbaum through the overlapping Maldonado-Engelbaum-Baem network.

Defendant Baem had specific knowledge of the location of Richard's remains (Juárez) but remained silent while the family searched for answers, effectively participating in the concealment and desecration of Richard's remains.

Through his actions and omissions, Defendant Baem deprived Richard Halliday and his family of their constitutional rights to:

(a)    Access to the courts – by suppressing evidence and obstructing the investigation.

(b)    Due process – by promoting false narratives and protecting the criminal enterprise.

(c)    Equal protection – by participating in a two-tier justice system that shields cartel-connected individuals while obstructing victims and whistleblowers.

**5. Defendant: Michael A. Ruggiero  (First Sergeant, Delta Battery, 1st Battalion, 43rd Air Defense Artillery Regiment (1/43 ADA), Fort Bliss – Official Capacity and/or Individual Actions)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through obstruction and retaliation).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday through deliberate obstruction, failure to protect, and protection of the criminal enterprise.

4. *18 U.S.C. § 1512* – Obstruction of Justice / Witness Tampering.

5. *18 U.S.C. § 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

7. Official Misconduct / Breach of Public Trust – Using NCO authority to suppress evidence, push false narratives, and protect compromised personnel.

8. Intentional Infliction of Emotional Distress (Texas law) – Participating in the coordinated harassment and obstruction directed at the Halliday family.

SPECIFIC ACTIONS BY DEFENDANT RUGGIERO THAT GIVE RISE TO LIABILITY

First Sergeant of Delta Battery, 1/43 ADA: Defendant Ruggiero served as the First Sergeant of Delta Battery, 1st Battalion, 43rd Air Defense Artillery Regiment (1/43 ADA) at Fort Bliss. This was the same unit as Richard Halliday, with Ruggiero occupying the senior enlisted leadership position in the battery during the critical period of Richard's disappearance and murder. As First Sergeant, he was the senior enlisted advisor to the battery commander and bore direct responsibility for the welfare, discipline, morale, and accountability of all enlisted soldiers in the unit.

Position of Authority and Responsibility: As First Sergeant, Defendant Ruggiero had direct authority over the soldiers in Delta Battery, including Richard Halliday. His position gave him control over personnel actions, duty assignments, and the enforcement of military discipline.

Knowledge and Concealment of the Arms Room Crime Scene (Building 2479): According to Thomas Cain, the Director of Emergency Services (DES) for Fort Bliss, the arms room crime scene in Building 2479—where Richard Halliday was murdered—was kept a secret. This concealment of a crime scene on a U.S. military installation constituted a deliberate obstruction of justice designed to:

(a)      Prevent the Halliday family and investigators from discovering the truth about Richard's murder.

(b)      Allow the destruction of forensic evidence that would have identified Richard's murderers.

(c)      Protect the criminal enterprise operating within the unit.

Refusal to Speak with the Halliday Family: When the Halliday family attempted to contact Defendant Ruggiero to obtain information about their son's disappearance and the circumstances surrounding it, he refused to speak with them. This refusal to communicate with the Gold Star family

of a soldier under his command constituted:

(a)     A deliberate obstruction of the family's ability to obtain truthful information.

(b)     A violation of the family's rights as next of kin.

(c)     Evidence of his participation in the command cover-up.

Failure to Act on Leilani Hart's Affidavit: On July 22, 2020, Leilani Hart (mother of prime suspect Dallas W. Hart) executed a sworn affidavit notarized in El Paso County in which she detailed extreme child sexual abuse committed by her husband, James Courtney Hart Sr., against their sons Dallas and Texas Hart, as well as other children. This affidavit directly implicated Dallas Hart in serious criminal conduct. Despite being in a position of authority over Dallas Hart (Richard's platoon leader), Defendant Ruggiero:

(a)     Took no action to investigate the allegations in the affidavit.

(b)     Failed to report the affidavit to CID, the Inspector General, or higher command.

(c)     Protected Dallas Hart from accountability, allowing him to continue serving as Richard's platoon leader.

(d)     Participated in the broader cover-up by suppressing this critical evidence.

Participation in the Retaliatory Command Climate: In his capacity as First Sergeant, Defendant Ruggiero was part of the command structure that created and maintained the hostile environment within Delta Battery that targeted Richard Halliday after he exposed cartel-linked criminal activity on Fort Bliss. This environment was documented as including:

(a)     The initiation of a retaliatory Chapter 14 administrative separation process.

(b)     The imposition of an illegally severe Field Grade Article 15 against Richard Halliday that included loss of three ranks, 45 days of extra duty in full battle gear with a mask, and a \(50\%\) pay reduction for two months—punishment that exceeded authorized maximum limits.

Failure to Protect a Whistleblower: Defendant Ruggiero failed to take any meaningful action to protect Richard Halliday from known threats and retaliation, despite his position of authority and his knowledge of Richard's whistleblowing activities regarding cartel-linked trafficking, child exploitation, and military ties to the August 3, 2019, Walmart mass shooting. His deliberate inaction contributed directly to the isolation and targeting of Richard that ultimately led to his murder.

Participation in the Cover-Up: According to the Halliday family's documented allegations, Defendant Ruggiero was directly involved in the cover-up of Richard Halliday's murder. His role as

13

First Sergeant gave him visibility into casualty reporting, personnel accountability, and unit strength—all of which were manipulated to create the false narrative that Richard was "AWOL" or "missing" rather than a murder victim. Public records confirm that Richard was "forcibly removed from his barracks in July 2020, murdered in the arms room, [and] his body stolen from Fort Bliss" .

Protection of Compromised Unit Leadership: Defendant Ruggiero's failure to act protected compromised individuals within Delta Battery, including:

(a)    Dallas W. Hart – Richard's platoon leader and prime suspect in his murder.

(b)    Jay D. Polin – Richard's First Sergeant who pushed false narratives.

(c)    SFC Gabriel Orona – Senior NCO who failed to protect Richard.

(d)    Other individuals within the 1/43 ADA network who were involved in the cover-up.

Obstruction of Justice: Through his failure to report known misconduct, protect a whistleblower, ensure proper investigation, conceal the crime scene, and suppress Leilani Hart's affidavit, Defendant Ruggiero actively participated in the obstruction of justice in the Richard Halliday murder investigation.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Ruggiero deprived Richard Halliday and his family of their constitutional rights, including:

(a)    First Amendment Rights – Participating in retaliation against Richard for his protected whistleblower activity.

(b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by failing to protect a known whistleblower from retaliation.

(c)    Right of Access to the Courts – Obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Ruggiero, through his actions as First Sergeant of Delta Battery, knowingly conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity that included obstruction of justice and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

**7. Defendant: Michael R. Rodick  (Lieutenant Colonel, U.S. Army – Former Commander, 1st Battalion, 43rd Air Defense Artillery Regiment, Fort Bliss – Individual Capacity)**

14

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice *(18 U.S.C. § 1512)*.

5. Civil Conspiracy.

6. Official Oppression *(Texas Penal Code § 39.03)*.

7. First Amendment Retaliation.

8. Command Responsibility / Failure to Supervise and Protect (in violation of UCMJ and Army Regulations).

SPECIFIC ACTIONS BY DEFENDANT RODICK THAT GIVE RISE TO LIABILITY

Defendant Michael R. Rodick served as the Battalion Commander of the 1st Battalion, 43rd Air Defense Artillery Regiment at Fort Bliss and held command responsibility over Delta Battery during the period when SPC Richard Halliday served in the unit and engaged in protected whistleblower activity exposing cartel-linked criminal trafficking on Fort Bliss.

As Battalion Commander, Defendant Rodick personally approved and directed the imposition of a cruel and abusive punishment as part of an unlawful Field Grade Article 15 against Richard Halliday. This punishment required Richard to wear full battle gear for 45 days in the extreme heat of El Paso, Texas, while wearing a mask, with only four hours per day to bathe and sleep. This constituted a clear abuse of power and amounted to maltreatment under the UCMJ.

The Field Grade Article 15 and its associated punishment have since been removed from Richard Halliday's official military record, confirming that the action taken against him was improper and retaliatory.

Richard Halliday was a Distinguished Honor Graduate of both Basic Combat Training and Advanced Individual Training, a Guidon Bearer, promoted before his peers with waivers, and earned three Army Achievement Medals in just 14 months — clear evidence of his exceptional performance and character. Despite this outstanding record, Defendant Rodick targeted him with disproportionate and abusive punishment.

As Battalion Commander, Defendant Rodick had a duty to protect soldiers under his command

15

who reported criminal activity. Instead, he participated in and enabled severe retaliation against Richard Halliday for his protected whistleblower activity.

Failed to take appropriate action to investigate or address the retaliation Richard Halliday faced after reporting criminal activity connected to Fort Bliss and the 2019 Walmart mass shooting.

Through his command position and direct involvement in the abusive Article 15 punishment, Defendant Rodick contributed to and failed to correct a hostile command climate in which Richard Halliday was subjected to severe and sustained retaliation for engaging in protected whistleblower activity.

Failed to ensure that proper procedures were followed when Richard Halliday went missing from his barracks room, including timely and accurate notification to the family.

On January 24, 2025, the Department of the Army officially classified Richard Halliday's death as "in the line of duty," confirming he was killed in retaliation for his courageous whistleblowing. Defendant Rodick's actions as Battalion Commander directly contributed to the environment that enabled this retaliation and murder.

Acted in concert with other members of the chain of command and the broader criminal enterprise by allowing, directing, and participating in the suppression of Richard Halliday's whistleblower activity and by failing to hold accountable those who retaliated against him.

Through his conduct as Battalion Commander — including the imposition of cruel and abusive punishment against a high-performing whistleblower — Defendant Rodick contributed to the deprivation of Richard Halliday's constitutional rights and to the ongoing obstruction of justice that has denied the Halliday Family meaningful accountability for their son's murder.

**8. Defendant: David H. Park  (Captain, U.S. Army – Former Battery Commander, Delta Battery, 1st Battalion, 43rd Air Defense Artillery Regiment, Fort Bliss – Individual Capacity)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice *(18 U.S.C. § 1512).*

16

5. Civil Conspiracy.

6. Official Oppression *(Texas Penal Code § 39.03)*.

7. First Amendment Retaliation.

8. Cruel and Unusual Punishment / Maltreatment (in violation of the Fifth and Eighth Amendments and Article 55, UCMJ).

SPECIFIC ACTIONS BY DEFENDANT PARK THAT GIVE RISE TO LIABILITY

Defendant David H. Park served as the Battery Commander of Delta Battery, 1-43 ADA at Fort Bliss from April 2018 through July 2020 and exercised direct command authority over SPC Richard Halliday during a period of intense whistleblower retaliation.

Failed to investigate reports of criminal activity and trafficking on Fort Bliss that Richard Halliday had raised, and instead participated in and enabled a pattern of retaliation against him for engaging in protected whistleblower activity.

Failed to take reasonable steps to protect Richard Halliday, a known whistleblower, from harassment, retaliation, and threats, despite his position as Battery Commander and his duty to safeguard soldiers under his command.

Failed to contact or notify the Halliday Family when Richard Halliday went missing from Fort Bliss. Instead, the family was forced to initiate contact with the unit themselves to inquire about their son's status and well-being.

Issued the order that formed the basis for one of the charges in Richard Halliday's Field Grade Article 15. Evidence and subsequent findings confirmed Richard did not violate that order, yet Defendant Park supported and participated in the imposition of maximum punishment.

Supported and participated in the imposition of maximum punishment under the Field Grade Article 15, which included a three-rank demotion, 45 days of extra duty during which Richard Halliday was required to wear full battle gear in the extreme heat of El Paso, Texas in May and June 2020, with only four hours per day to bathe and sleep, 45 days restriction, and forfeiture of half pay for two months. This punishment was grossly disproportionate, abusive, and designed to break rather than rehabilitate a soldier.

Through the imposition of this extreme and punitive regimen — requiring full battle gear for approximately 20 hours per day with minimal rest — Defendant Park subjected Richard Halliday to cruel and unusual conditions that constituted maltreatment and violated fundamental standards of military discipline and human decency.

17

On 30 April 2021, Defendant Park wrote a letter to Patricia Halliday in which he refused to support the family's efforts to locate their missing son, stated that he could not in good conscience offer additional support, and accused the family of engaging in rhetoric that incited others. This letter was sent while Richard Halliday was still missing and after the family had been publicly searching for him for months.

Through his actions as Battery Commander, Defendant Park contributed to and failed to correct a hostile command environment in which Richard Halliday was subjected to severe and sustained retaliation for his protected whistleblower activity exposing criminal trafficking on Fort Bliss.

Acted in concert with other members of the command and the broader criminal enterprise by supporting and participating in the imposition of abusive and disproportionate punishment against Richard Halliday and by later refusing to support the family's search for truth and accountability.

Through his conduct as Battery Commander and his subsequent statements and actions, Defendant Park contributed to the deprivation of Richard Halliday's constitutional rights, including his First Amendment rights to free speech and to petition the government, and to the ongoing obstruction of justice that has denied the Halliday Family meaningful accountability for their son's murder.

### 9. Defendant: James P. Isenhower III  (Major General, U.S. Army – Commanding General, 1st Armored Division and Fort Bliss – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (Due Process, Equal Protection, and Access to the Courts)

2. Wrongful Death and Survival Action (Texas law) – Command Responsibility / Deliberate Indifference

3. Civil Conspiracy

4. Obstruction of Justice (federal and military law)

5. Official Oppression / Dereliction of Duty (military and Texas law)

6. Aiding and Abetting the criminal enterprise and cover-up (through command failures and deliberate inaction)

7. Command Responsibility / Failure to Supervise and Protect.

SPECIFIC ACTIONS BY DEFENDANT ISENHOWER THAT GIVE RISE TO LIABILITY

As Commanding General of Fort Bliss, Defendant James P. Isenhower III had direct command

18

responsibility over all operations, security, investigations, and personnel at Fort Bliss during the critical period following Richard Halliday's disappearance and murder. He failed to ensure a proper, independent, and thorough investigation into the murder of a whistleblower soldier under his command.

Defendant Isenhower received multiple formal complaints and evidence from the Halliday family and Judge Roger Rodriguez detailing retaliation, leaks of investigative files to Leilani Hart by CID Agent Tavita Nuusa, and obstruction of justice. He failed to take meaningful corrective action or ensure an internal affairs investigation was conducted.

Defendant Isenhower approved, authorized, or failed to rescind a legally deficient retaliation against Judge Roger Rodriguez, a key whistleblower and witness in Richard Halliday's case. The retaliation was issued without proper investigation, without notice to Judge Rodriguez, without an opportunity to respond, and without corroborating evidence. Former Director of Emergency Services Thomas Cain confirmed in writing that the retaliation was connected to Richard Halliday's case.

Defendant Isenhower failed to lift or review the retaliation on Judge Roger Rodriguez even after being provided clear evidence that it was unlawful, retaliatory, and directly interfered with the investigation into Richard Halliday's murder.

Defendant Isenhower failed to ensure the preservation of the crime scene at Building 2479 (Richard Halliday's last known location and barracks). He ordered or permitted a full renovation of the arms room "at any expense" and without proper protocol, resulting in the destruction of critical forensic evidence.

Defendant Isenhower failed to ensure proper chain-of-command accountability for compromised CID personnel, including Agents Marlon Soto and Tavita Nuusa, despite credible whistleblower complaints and evidence of leaks and tampering in Richard Halliday's investigation file.

Defendant Isenhower failed to address or investigate credible reports of severe security breaches at Fort Bliss, including unauthorized access by non-military personnel, the presence of minors in barracks, and other conditions that Richard Halliday had reported prior to his murder.

Defendant Isenhower failed to provide proper notification, support, or condolences to the Halliday family after the Department of Defense officially confirmed Richard Halliday's death, despite the murder occurring on Fort Bliss under his command.

Through his command failures, deliberate inaction, and refusal to correct known violations, Defendant Isenhower participated in a pattern of obstruction that protected the criminal enterprise

19

responsible for Richard Halliday's murder and allowed the cover-up to continue.

Defendant Isenhower's actions and omissions deprived the Halliday family of their constitutional rights to due process, equal protection, and meaningful access to justice by allowing retaliation against witnesses, failing to preserve evidence, and shielding compromised personnel and processes from accountability.

**10. Defendant Sean C. Bernabe (Individually and in his Official Capacity as former Commanding General, 1st Armored Division and Fort Bliss)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *18 U.S.C. § 1962(c) & (d)* – RICO (command responsibility for the enterprise)

2. *42 U.S.C. § 1983* – Deprivation of constitutional rights (in both individual and official capacities)

3. Wrongful Death and Survival Action (Texas law)

4. Bivens claim (Fifth Amendment – deliberate indifference to whistleblower safety and cover-up)

5. Obstruction of Justice

6. Negligence and Gross Negligence

SPECIFIC ACTIONS BY DEFENDANT BERNABE THAT GIVE RISE TO LIABILITY

As Commanding General of the 1st Armored Division and Fort Bliss during the critical period following Richard Halliday's murder, Defendant Bernabe had command responsibility over the investigation and cover-up.

Defendant Bernabe failed to ensure a proper, independent investigation into the murder of a whistleblower soldier under his command, despite clear evidence of foul play and cartel-linked activity on Fort Bliss.

Defendant Bernabe's leadership contributed to the culture of corruption and protection of the criminal enterprise that Richard Halliday was killed for exposing.

Publicly claimed "no evidence of foul play" at a February 2021 press briefing, contradicting internal reports and later DOD confirmation. Bernabe stated, "There is no evidence of any linkage of those cases here at Fort Bliss."

Defendant Bernabe Participated in or permitted the improper reclassification of Richard Halliday's status in November 2020 as a CONUS DUSTWUN (Duty Status — Whereabouts

20

Unknown), a bureaucratic maneuver that halted accountability, blocked next-of-kin rights, and was designed to erase evidence of foul play while the command publicly claimed it was "doing everything possible."

Defendant Bernabe participated in or allowed the continuation of policies and practices that obstructed justice and denied the Halliday family access to information and accountability.

Under Defendant Bernabe's command, Fort Bliss CID and leadership continued to feed the family the false "missing soldier" narrative while evidence of murder was being destroyed or concealed.

Defendant Bernabe lied to the Halliday family about the identity and significance of Nidal Baem (father-in-law of LTC Bradford Bugado), who confirmed on CCTV that Richard's remains had been recovered in Juárez, Mexico.

Defendant Bernanbe Protected and shielded Nidal T. Baem — a known Palestinian arms dealer, cartel operative, and FBI impersonator with terroristic threat convictions and ties to the El Paso supply network — from proper investigation, despite Baem's direct access to Fort Bliss operations through his son-in-law and his involvement in Western Frontier Trading LLC's multi-million-dollar ammunition and supply contracts.

Defendant Bernabe blocked further searches and denied the family information about positive hits on human remains by BORSTAR on Fort Bliss in November 2020.

Defendant Bernabe failed to act on a whistleblower complaint from Judge Roger Rodriguez regarding leaks by Fort Bliss CID Agent Tavita Nuusa to Leilani Hart and Dallas Hart, allowing corruption and obstruction to continue.

Defendant Bernabe permitted and participated in the false narrative that Richard Halliday was AWOL and later suggested suicide, despite internal reports indicating foul play and retaliation for exposing criminal activity.

Defendant Bernabe oversaw and permitted a pattern of obstruction that included the misuse of a publicly staged "Task Force Find Richard Halliday" while privately reclassifying the case and suppressing evidence linking Baem and the broader network to the cover-up and possible disposal of Richard's remains.

Defendant Bernabe never notified the Halliday family of critical developments, never issued a proper operational order for the search effort, and allowed the "Task Force Find Richard Halliday" to function as a public relations exercise rather than a legitimate investigation.

21

Even after the Department of Defense officially confirmed in January 2025 that Richard Halliday was murdered "in the line of duty" as a result of exposing cartel-linked criminal activity at Fort Bliss, Defendant Bernabe never contacted or offered condolences to the Gold Star family.

**11. Defendant: David F. Stewart (Brigadier General, U.S. Army – Former Commanding General, 32nd Army Air and Missile Defense Command (32nd AAMDC), Fort Bliss; Current Director, Counter-Unmanned Aircraft Systems Office, Pentagon – Official Capacity and/or Individual Actions)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through obstruction and retaliation).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday through deliberate obstruction, failure to protect, and protection of the criminal enterprise.

4. *18 U.S.C. § 1512* – Obstruction of Justice / Witness Tampering.

5. *18 U.S.C. § 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

7. Official Misconduct / Breach of Public Trust – Using command authority to suppress evidence, push false narratives, and protect compromised personnel.

8. *10 U.S.C. § 1034* – Retaliation Against a Whistleblower.

9. *18 U.S.C. § 4* – Misprision of Felony (concealing knowledge of felonies).

10. *18 U.S.C. § 641* – Misappropriation of Public Funds (Task Force Find Richard Halliday).

SPECIFIC ACTIONS BY DEFENDANT STEWART THAT GIVE RISE TO LIABILITY

Commanding General, 32nd AAMDC at Fort Bliss: Defendant Stewart served as the Commanding General of the 32nd Army Air and Missile Defense Command at Fort Bliss from August 13, 2020, to June 15, 2023 . In this capacity, he held command responsibility over Delta Battery, 1st Battalion, 43rd Air Defense Artillery Regiment (1/43 ADA)—the exact unit in which Richard Halliday

22

served and was murdered. His position gave him direct authority over the investigation into Richard's disappearance and the subsequent cover-up.

Public Role in the "Search" Narrative: On September 26, 2020, Defendant Stewart appeared alongside the Halliday family in a Public Service Announcement asking the public to assist in finding Richard Halliday . While this appearance projected an image of cooperation, the Halliday family has documented that this was part of a broader pattern of deception designed to mislead them and the public about the true nature of the investigation.

Conspiracy to Obstruct Justice *(18 U.S.C. § 1512(c))*: From January 2020 to January 2025, Stewart conspired to obstruct justice by failing to investigate the fabricated DUI arrest of Pvt. Richard Halliday (dismissed July 9, 2020) and endorsing a punitive Field-Grade Article 15 (60 days restriction, 45 days extra duty in 90°F heat, 3-rank demotion to E-1, 50% pay withheld) to silence Halliday's whistleblower complaints about 1LT Dallas Wayne Hart's crimes and cartel trafficking tied to 3905 Bliss Avenue. Stewart's inaction allowed Leilani Hart's unauthorized CID file access and Tavita Nuusa's compromised investigation, obstructing a homicide investigation. This conspiracy prevented a fair investigation into Halliday's murder, confirmed "in the line of duty" (January 25, 2025), causing irreparable harm to the family's pursuit of justice. It shielded implicated personnel (Hart, Nuusa, Ron Steeg) and cartel networks linked to the Walmart mass shooting, violating due process (5th Amendment).

Deprivation of Rights Under Color of Law *(18 U.S.C. § 242)*: As 32nd AAMDC commander, Stewart willfully deprived the Halliday family of their 1st, 4th, 5th, and 14th Amendment rights by endorsing a Stars and Stripes smear campaign falsely labeling Halliday a "drunk driver," allowing evidence destruction in Halliday's barracks (August 26, 2020), and failing to correct DoD/DoJ/FBI misinformation (e.g., AWOL, Mexico crossing on March 28, 2020). These actions suppressed the family's advocacy and obstructed their access to evidence, chilling the FindRichardHalliday campaign (1.6 million followers), denying the family due process, and perpetuating a cover-up.

Misprision of Felony *(18 U.S.C. § 4)*: Stewart knowingly concealed felonies, including Leilani Hart's confessed crimes (child pornography, child assault, incest, CID# 429-2020-CID014) and Dallas Hart's cartel trafficking, by failing to investigate or report them to proper authorities. He ignored Tavita Nuusa's removal after raising concerns and Ron Steeg's conflicts with Delta Battery, 1/43 ADA, allowing a compromised CID investigation. This concealment enabled a cartel network linked to the Walmart mass shooting and Halliday's murder, endangering public safety and obstructing justice.

23

Misappropriation of Public Funds *(18 U.S.C. § 641)*: Stewart authorized or failed to oversee the Task Force Find Richard Halliday (November 9, 2020), a staged operation involving 15+ agencies (CID, FBI, CBP, EPPD, ATF, DHS, etc.) without an Operational Order, misappropriating public funds. The task force used an untrained K9 team and falsely claimed State Department investigations at KM29 in Juárez, as contradicted by the family's livestream with SammyC. This fraudulent task force misled the family, was announced by Gen James McConville, and wasted taxpayer resources, undermining public trust and delaying a homicide investigation.

Retaliation Against a Whistleblower *(10 U.S.C. § 1034)*: Stewart failed to protect Halliday from retaliation, allowing disinformation, threats, and harassment—including false criminal allegations—to silence his whistleblower efforts exposing cartel activity. As commander, he had a duty to protect soldiers who reported criminal activity. Instead, he participated in and enabled severe retaliation against Halliday.

Obstruction of Federal Investigations: Stewart is accused of obstructing critical investigations by ignoring unauthorized access to evidence, failing to address conflicts of interest, and endorsing fraudulent inquiries that shielded implicated personnel and cartel links. This included allowing compromised CID personnel (Tavita Nuusa and Marlon Soto) to remain on the case despite documented conflicts of interest and leaks to the Hart family.

Fraudulent Communications & Cover-Up: Stewart engaged in a conspiracy to deceive the Halliday family and the public through false statements, staged investigations, and misinformation campaigns designed to hide the true extent of cartel activity and complicity. This included falsely claiming "no evidence of foul play" while evidence of murder was being destroyed or concealed.

Connection to the Cartel Network: Stewart's failure to act protected compromised individuals within the 32nd AAMDC, including:

(a)    LTC Bradford Bugado – G3, 32nd AAMDC and son-in-law of cartel operative Nidal Tahsin Baem.

(b)    Dallas W. Hart – Richard's platoon leader and prime suspect in his murder.

(c)    Leilani Hart – Dallas's mother, convicted criminal, and active participant in witness intimidation.

(d)    Tavita Nuusa – Compromised CID Agent whose credentials were revoked.

(e)    Michael Ruggiero – Richard's First Sergeant, involved in the cover-up.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant

24

Stewart deprived Richard Halliday and his family of their constitutional rights, including:

(a)    First Amendment Rights – Participating in retaliation against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.

(b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by failing to protect a known whistleblower from retaliation and suppressing evidence.

(c)    Right of Access to the Courts – Obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Stewart, through his actions as Commanding General of the 32nd AAMDC, knowingly conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity that included obstruction of justice and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

## 12. Defendant: Micah R. Brown (First Lieutenant, Delta Battery, 1st Battalion, 43rd Air Defense Artillery Regiment, Fort Bliss – Individual Capacity)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983*

2. *18 U.S.C. § 1962(c) & (d)* – RICO

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice *(18 U.S.C. § 1512).*

5. Civil Conspiracy.

6. Official Oppression *(Texas Penal Code § 39.03).*

7. First Amendment Retaliation.

SPECIFIC ACTIONS BY DEFENDANT BROWN THAT GIVE RISE TO LIABILITY

As SPC Richard Halliday's direct supervisor (1st Lieutenant), Defendant Micah R. Brown was contacted by Richard's parents shortly after he went missing and refused to provide any meaningful assistance, information, or cooperation regarding Richard's status or welfare.

Defendant Brown was rude, dismissive, and hostile toward Richard Halliday's grieving parents

during their phone call, demonstrating deliberate indifference to the family's urgent need for information and causing them additional emotional distress during a time of extreme vulnerability.

Despite his position of authority and his direct supervisory responsibility over Richard Halliday, Defendant Brown failed to report concerns, assist in any welfare check, or facilitate communication between the family and the unit or chain of command.

Defendant Brown's refusal to cooperate and his hostile treatment of the family obstructed and delayed the family's efforts to obtain timely and accurate information about Richard's disappearance, thereby contributing to the broader pattern of obstruction and cover-up by Fort Bliss personnel.

By stonewalling the family and refusing to be helpful, Defendant Brown participated in the institutional effort to limit information flow and hinder the investigation into Richard Halliday's murder and the surrounding circumstances.

Defendant Brown's conduct as Richard's immediate supervisor deprived the Halliday family of their ability to promptly exercise their rights as next of kin and meaningfully participate in the search and investigation process.

Defendant Brown's actions and omissions were part of a pattern of conduct by Fort Bliss personnel that facilitated the cover-up of Richard Halliday's murder, obstructed justice, and prevented the family from learning the truth about what happened to their son.

Defendant Brown participated in or had knowledge of the cover-up and took steps that obstructed justice.

Defendant Micah R. Brown, as Richard Halliday's direct supervisor (1st Lieutenant), aided and abetted the transnational terroristic organization (Sinaloa Cartel-linked network operating at Fort Bliss) by refusing to provide any assistance or information to Richard's parents when they contacted him after their son went missing, thereby helping to maintain the cover-up and prevent the family from discovering the cartel infiltration and trafficking that Richard had been exposing.

### 13. Defendant Dannia Catzin Gonzales Ambriz (Fugitive; Hart associate)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *18 U.S.C. § 1962(c) & (d)* – RICO (predicate acts including receipt/possession of stolen property from the murder victim, obstruction of justice, and participation in the criminal enterprise)

2. Wrongful Death and Survival Action (Texas law) – as a participant in the post-murder cover-up and spoliation of evidence

3. *42 U.S.C. § 1983* (if acting in concert with state actors)

4. Fraud and Theft (Texas law)

5. Obstruction of Justice

SPECIFIC ACTIONS BY DEFENDANT AMBRIZ THAT GIVE RISE TO LIABILITY

Contacted the Halliday family immediately upon their arrival in El Paso in September 2020, impersonating a witness to Richard's case and exploiting their vulnerabilities to mislead and misdirect the search for their missing son

Defendant Ambriz and her husband Jonathan Ambriz have documented connections to David Candelaria of KTSM, Bob Moore of El Paso Matters, Rosa Maria Valdez Garcia, Belen Rocha, and Walmart defense attorney Felix Valenzuela — individuals who repeatedly targeted the Halliday family and pushed false narratives about Richard Halliday's case.

Used KTSM as a platform to frame a false narrative about Richard Halliday's disappearance, participating in a recorded interview at the KTSM studio that was used to interfere with the investigation

Scammed individuals and businesses in El Paso through fraudulent schemes, including attempting to rent out a house she did not own, defrauding multiple families in the process

Defendant Ambriz participated in the coordinated effort to impersonate the Halliday family through fake social media accounts and websites. These accounts, operated with Leilani Hart, Dallas Hart, Nick Brown-Bell Nofzinger, Amber Chase, and Bob Moore of El Paso Matters, were used to harass, threaten, and intimidate the family while spreading false narratives to obstruct the investigation.

Possessed Richard Halliday's credit cards after his murder, demonstrating direct involvement in the theft of property from a murdered soldier and participation in the cover-up

Defendant Ambriz's actions were part of a broader pattern of witness intimidation, evidence spoliation, and narrative control designed to protect the criminal enterprise and prevent accountability for Richard Halliday's murder.

Maintained connections to Belen Ortega Rocha, a suspect in Richard Halliday's case, further establishing her direct involvement in the murder investigation

Associated with Rosa Maria Valdez Garcia and Thomas Hoffmann, who produced tampered recordings and documents introduced into the Walmart mass shooting case record by defense attorney Felix Valenzuela

Connected to Leilani Hart (Richard's platoon leader's mother and Tavita Nuusa's partner) through their shared congregation in the Church of Jesus Christ of Latter-Day Saints—the same

27

congregation where Walmart defense attorney Felix Valenzuela advised Hart

Resided at 3905 Bliss Avenue, a location linked to multiple individuals who targeted the Halliday family, Judge Roger Rodriguez (the whistleblower witness), and the Walmart mass shooting case

Related to David Candelaria through marriage (Jonathan Ambriz is connected to Candelaria), who has continued to target Richard's case by republishing fabricated stories through Bob Moore of El Paso Matters

Connected to the Mormon-faction network that includes Leilani Hart, Rosa Maria Valdez Garcia, and Felix Valenzuela—all individuals who have been documented targeting the Halliday family and interfering with Richard's murder investigation

Participated in a pattern of fraud and theft that extended beyond the Halliday case, including scamming horse sales with bounced payments and other documented schemes. In June 2024, Defendant Ambriz and her husband were arrested for fraud, theft, and assault after attempting to rent out a house they did not own, further demonstrating their pattern of fraudulent and criminal conduct in the El Paso community.

Targeted Judge Roger Rodriguez, the whistleblower witness in Richard's case, in coordination with Rosa Maria Valdez Garcia and other members of the 3905 Bliss Avenue network

Acted as an "unreliable source" for El Paso Matters and KTSM, providing false information to Bob Moore that was used to retaliate against and discredit Judge Roger Rodriguez

Associated with individuals who impersonated the Halliday family on false Facebook pages, including Leilani Hart, Dallas Hart, Bob Moore, Nick Brown-Bell Nofzinger, and Amber Chase

Connected to William Molinar—a convicted child rapist who received shockingly lenient probation from Judge Sam Medrano—with Molinar being a close associate of the Ambriz family and a suspect in Richard's case

Targeted the Walmart mass shooting case, with her family members (Rosa Maria Valdez Garcia and Thomas Hoffmann) producing tampered evidence that was unlawfully introduced into the court record by defense attorney Felix Valenzuela

Connected to Arturo Alba, a Juárez TV journalist arrested for trafficking and later murdered in 2020, confirming ties to organized crime and violence

Associated with Luis Rene Diaz, who managed the El Paso DA's office under usurper Bill Hicks, and who was accused by Loretta Lynn Hewitt of playing politics with the Walmart case

28

Engaged in obstruction of justice by interfering with the Halliday family's investigation, possessing Richard's property after his death, and participating in the network that suppressed the truth about Richard's murder

Facilitated the cover-up of the "Maiella Connection" through her association with individuals who targeted both the Halliday family and the Walmart mass shooting case

Now a fugitive who evaded justice after interfering with the court's ability to assess her flight risk

### 14. Defendant: Nick Brown-Bell Nofzinger (a.k.a. Nicholas Brown Bell / Nick Nofziger – Former Public Affairs Noncommissioned Officer, 1st Armored Division, Fort Bliss – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through official information control and narrative manipulation).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice and witness intimidation).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday and the subsequent concealment of his remains through deliberate participation in the official cover-up narrative.

4. *18 U.S.C. § 1512* – Obstruction of Justice / Witness Tampering.

5. *18 U.S.C. § 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

7. Official Misconduct / Breach of Public Trust – Using military public affairs authority to propagate false narratives that obstructed the investigation and misled the Gold Star family.

8. Intentional Infliction of Emotional Distress (Texas law) – Participating in the coordinated campaign of harassment and impersonation against the Halliday family.

SPECIFIC ACTIONS BY DEFENDANT NOFZINGER THAT GIVE RISE TO LIABILITY

Official Role in the Fort Bliss Public Affairs Apparatus: Defendant Nofzinger served as a Public Affairs Noncommissioned Officer (NCO) assigned to the 1st Armored Division at Fort Bliss . In this capacity, he was responsible for crafting and disseminating official communications regarding the disappearance and murder of Fort Bliss whistleblower Soldier Richard Halliday. His position placed him at the nexus of information control, giving him direct authority over the official narrative presented to the Halliday family, the media, and the public.

Production of the Official "Missing Soldier" Narrative: On or about October 30, 2020, Defendant Nofzinger produced and disseminated a video titled *"1AD PAO Media Update-Private Richard Halliday"* . In this video, Fort Bliss spokesperson Lt. Col. Allie Payne provided an update to the press regarding efforts to find "missing Soldier Private Richard Halliday" and asked anyone with information to come forward . Defendant Nofzinger's direct involvement in producing this official communication demonstrates that he was a knowing participant in the command's decision to portray Richard as "missing" rather than as a murder victim—despite the existence of evidence of foul play known to Fort Bliss leadership. This false narrative was used to obstruct the investigation, delay accountability, and mislead the Halliday family.

Participation in the Cover-Up through Narrative Control: By producing official communications that framed Richard Halliday's disappearance as a routine missing person case rather than a murder, Defendant Nofzinger actively participated in the coordinated command cover-up. This narrative served multiple purposes:

(a)     It allowed Fort Bliss command to avoid acknowledging that Richard had been murdered in retaliation for exposing cartel-linked trafficking on the installation.

(b)     It prevented the Halliday family from obtaining truthful information about their son's fate.

(c)     It shielded prime suspects, including Dallas W. Hart and LTC Bradford Bugado, from scrutiny by directing attention away from the Fort Bliss command structure and toward a false "missing soldier" narrative.

Coordination with Compromised Command Leadership: Defendant Nofzinger produced this official communication under the direction of Lt. Col. Allie Payne , the Fort Bliss Spokesperson. Lt. Col. Payne is also a named defendant in this complaint for her role in the cover-up. The production and dissemination of the official "missing soldier" narrative was a coordinated effort involving senior Fort Bliss leadership, including MG Sean Bernabe, BG David Stewart, and CSM Jerry Jacobitz**—all of

whom participated in the broader pattern of obstruction documented in this complaint.

Creation and Operation of Fake Social Media Accounts: Defendant Nofzinger is credibly alleged to have participated in the creation and operation of fake social media accounts and websites impersonating the Halliday family, including the "Find Richard Halliday" pages that were used to control the narrative and intercept communications. These accounts were operated in coordination with:

(a) Leilani Hart (mother of prime suspect Dallas W. Hart)

(b) Dallas Hart (prime suspect and Richard's platoon leader)

(c) Dannia Catzin Gonzales Ambriz (possessed Richard's credit cards after his murder)

(d) Amber Chase (retired Fort Bliss mortuary specialist who engaged in graphic threats)

(e) Bob Moore (El Paso Matters) and Nick Brown-Bell Nofzinger himself

Coordinated Harassment and Intimidation Campaign: Defendant Nofzinger participated in the coordinated campaign of harassment and intimidation directed at the Halliday family following Richard's murder. This campaign included:

(a) Using fake social media profiles to attack, threaten, and intimidate the Halliday family.

(b) Spreading false narratives to discredit the family's pursuit of justice and to protect the criminal enterprise.

(c) Engaging in doxing of the Halliday family's personal information to facilitate further harassment by other members of the network.

(d) Coordinating with other named defendants to amplify the false "missing soldier" narrative while suppressing evidence of cartel-linked trafficking and murder.

Suppression of Evidence and Obstruction of the Investigation: By participating in the official narrative control apparatus and the social media impersonation campaign, Defendant Nofzinger knowingly contributed to the suppression of evidence and the obstruction of the investigation into Richard Halliday's murder. His actions—both in his official capacity as a Public Affairs NCO and in his unofficial capacity as a member of the impersonation network—were designed to:

(a) Conceal the truth about Richard's whistleblowing activities.

(b) Shield the criminal enterprise operating at Fort Bliss.

(c) Prevent the Halliday family from obtaining justice and the return of their son's

remains.

(d)    Intimidate witnesses and whistleblowers, including Judge Roger Rodriguez, from coming forward with evidence.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Nofzinger deprived Richard Halliday and his family of their constitutional rights, including:

(a)    First Amendment Rights – Participating in retaliation against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.

(b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by participating in a coordinated effort to suppress evidence and obstruct the investigation.

(c)    Right of Access to the Courts – Suppressing evidence, intimidating witnesses, and obstructing the investigation to prevent the Halliday family from obtaining justice.

- Knowing Participation in the RICO Enterprise: Defendant Nofzinger, through his actions as a Public Affairs NCO and as a member of the impersonation network, knowingly conducted and conspired to conduct the affairs of the criminal enterprise (the association-in-fact network of compromised military, law enforcement, judicial, and media actors) through a pattern of racketeering activity that included obstruction of justice, witness intimidation, and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

## 15. Defendant: James Courtney Hart  (VA IDES/PEBLO Processor, Fort Bliss – Individual Capacity)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (acting under color of law as a federal government employee).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice *(18 U.S.C. § 1512).*

5. Civil Conspiracy.

6. Intentional Infliction of Emotional Distress (Texas law).

SPECIFIC ACTIONS BY DEFENDANT HART THAT GIVE RISE TO LIABILITY

Defendant James Courtney Hart, while employed as a VA IDES/PEBLO processor at Fort Bliss with access to confidential soldiers' medical and personnel records, used his government position to forge signatures and illegally process medical board documents for personal profit and advantage.

As the father of Dallas W. Hart (the prime suspect in the murder of SPC Richard Halliday), Defendant Hart is a central figure in the criminal enterprise responsible for the murder of Fort Bliss whistleblower Soldier Richard Halliday and the subsequent cover-up.

Participated in the creation and maintenance of a culture of impunity at Fort Bliss by abusing his government position, which enabled the criminal enterprise — including his son Dallas W. Hart — to operate without accountability and ultimately target and murder Richard Halliday for exposing cartel-linked criminal activity on the installation.

Acted in concert with other members of the criminal enterprise, including his wife Leilani Hart and son Dallas W. Hart, to obstruct justice and protect the network responsible for Richard Halliday's murder and the trafficking of his remains.

Through his actions and his position within the Hart family network, Defendant Hart contributed to the severe and ongoing retaliation and obstruction directed at the Gold Star Family of Richard Halliday, including efforts to intimidate, harass, and silence those seeking justice for their son.

Defendant Hart's conduct — including his abuse of a government position, forgery of official documents, and participation in the criminal enterprise that murdered a protected whistleblower — constituted knowing participation in the RICO enterprise responsible for obstructing justice in the murder of Richard Halliday and depriving his family of their constitutional rights to due process and meaningful access to the courts.

Through his actions and omissions, Defendant Hart deprived Richard Halliday and his family of their constitutional rights, including their right to due process, equal protection, and access to the courts, by facilitating the cover-up and protecting the individuals responsible for Richard's murder.

**16. Defendant: Amber L. Chase (EPISD Employee, Former Fort Bliss Mortuary Affairs Specialist)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. Harassment under *Texas Penal Code §42.07*

2. Witness intimidation under *Texas Penal Code §36.05*

3. Defamation

4. Intentional infliction of emotional distress

5. Civil conspiracy

6. Deprivation of civil rights under *42 U.S.C. §1983*

7. *18 U.S.C. § 1962(c) & (d)* – RICO

8. Wrongful Death / Survival Action (Texas law)

9. Cyberstalking – *18 U.S.C. § 2261A*

10. Abuse of Corpse *(Texas Penal Code § 42.08)*

SPECIFIC ACTIONS BY DEFENDANT CHASE THAT GIVE RISE TO LIABILITY

Defendant Chase is a retired Fort Bliss mortuary affairs specialist who is now employed by the El Paso Independent School District (EPISD).

As a former mortuary affairs professional at Fort Bliss, Defendant Chase had specialized knowledge and access relevant to the handling, movement, or concealment of remains.

Defendant Chase has acted in concert with Michael P. Gonzales (President of the EPISD Fraternal Order of Police) and other members of the criminal enterprise to obstruct justice, interfere with the Halliday family's efforts, and protect those responsible for the murder of Richard Halliday.

Defendant Chase participated in or facilitated the impersonation of the Halliday family and the operation of fake social media accounts used to harass, intimidate, and interfere with the investigation (as detailed in Plaintiffs' criminal complaint filed with federal authorities).

Engaged in a multi-year campaign of graphic, vulgar, and threatening online harassment against the Gold Star family, including:

"Woman I will f--k the soul out of Richard and send you the video"

Repeated statements telling the family to "kill yourself"

Participation in coordinated Facebook groups that issued death threats and doxed the family's residence

Documented decision to discontinue prescribed bipolar medication in favor of holistic alternatives, establishing a pattern of instability that enabled sustained, technically facilitated digital harassment and witness intimidation

Through her current position with EPISD and her associations, Defendant Chase has continued to shield the enterprise and obstruct accountability.

Amber L. Chase, an EPISD employee with prior mortuary affairs experience, engaged in a

34

multi-year campaign of graphic, vulgar, and threatening online harassment against the Gold Star family of Richard Halliday. This included direct threats such as "Woman I will f--k the soul out of Richard and send you the video," repeated statements telling the family to "kill yourself," and participation in coordinated Facebook groups that issued death threats and doxed the family's residence.

These actions were taken in coordination with other members of the enterprise (including Patrick Brookshier, Michael P. Gonzales, and Angela De Los Santos) as part of a pattern of racketeering activity designed to obstruct justice, silence the family's advocacy on the Find Richard Halliday Facebook page and Richard Halliday webpage, and protect the network responsible for Richard Halliday's murder and the trafficking of his remains.

## 17. Defendant: Joshua A. Lyons  (Lieutenant Colonel, U.S. Army – Former Casualty Assistance Officer assigned to the Halliday family – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (Due Process and Access to the Courts)
2. Civil Conspiracy
3. Obstruction of Justice (federal and military law)
4. Impersonation / Unauthorized Use of Identity
5. Aiding and Abetting the criminal enterprise and cover-up

SPECIFIC ACTIONS BY DEFENDANT LYONS THAT GIVE RISE TO LIABILITY

Defendant Joshua A. Lyons was assigned as the Casualty Assistance Officer (CAO) to the Halliday family following the murder of Fort Bliss whistleblower Soldier Richard Halliday. Instead of providing legitimate support and assistance, he weaponized his official position against the family.

Defendant Lyons, a former member of the Asymmetric Warfare Group (AWG) and a published expert on tactical military deception, deliberately used deception tactics, narrative control, and selective information withholding against the grieving Gold Star family.

Defendant Lyons is credibly alleged to have created and operated the fake female Facebook profile "Hailey Separatio", which was used to spread disinformation about Richard Halliday's case, upload forged documents, report truthful posts for removal, and discredit the Halliday family's efforts to expose the truth.

Defendant Lyons participated in the unauthorized multi-agency "Task Force Find Richard

Halliday" meeting without an operational order and while appearing out of uniform, contributing to the shadow and unaccountable nature of the meeting designed to contain information about Richard Halliday's murder.

Defendant Lyons helped suppress and bury critical investigative leads, including information regarding the identity, associations, and activities of Nidal Tahsin Baem (who claimed on CCTV that Richard Halliday's remains had been recovered in Juárez) and fugitive Dannia Catzin Gonzalez Ambriz, who was in possession of Richard's credit cards and financial information after his death.

Defendant Lyons had direct access to critical information regarding Richard Halliday's case yet deliberately failed to provide that information to the family, despite being placed in a position of trust as their assigned Casualty Assistance Officer.

Defendant Lyons maintained and referenced "Men in Black" style insider knowledge while actively working to obstruct the Halliday family's access to information and their ability to hold those responsible for Richard's murder accountable.

Defendant Lyons's actions were part of a broader pattern of obstruction that protected the criminal enterprise responsible for Richard Halliday's murder, including individuals and networks connected to cartel-linked trafficking at Fort Bliss.

Through his conduct as the assigned Casualty Assistance Officer, Defendant Lyons directly contributed to the deprivation of the Halliday family's constitutional rights by obstructing their access to justice, interfering with the investigation, and actively working against the family he was supposed to support.

Defendant Lyons weaponized his official position and specialized training in asymmetric warfare to aid and abet the criminal enterprise responsible for the murder of a U.S. Army whistleblower.

**18. Defendant: Chris Martin  (Also known as Christopher Nicholas Martin / Cris Martin – Member of West Valley Fire Department and Special Events Coordinator at Concordia Cemetery – Official Capacity and/or Individual Actions)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (Due Process and Equal Protection)

2. Civil Conspiracy

3. Obstruction of Justice (federal and state law)

4. Impersonation / Unauthorized Use of Identity

5. Harassment and Intimidation

6. Aiding and Abetting the criminal enterprise and cover-up

SPECIFIC ACTIONS BY DEFENDANT MARTIN THAT GIVE RISE TO LIABILITY

Defendant Chris Martin, while serving as a member of the West Valley Fire Department and as Special Events Coordinator at Concordia Cemetery, has engaged in a pattern of criminal conduct aimed at obstructing the investigation into the murder of Fort Bliss whistleblower Soldier Richard Halliday.

Defendant Martin is credibly alleged to have participated in digging in the desert in an apparent effort to locate and recover Richard Halliday's remains, specifically his head or skull — an act that demonstrates knowledge of and participation in the concealment and desecration of a murdered U.S. soldier's body.

Defendant Martin has publicly represented himself as a member of official institutions (West Valley Fire Department and Concordia Cemetery), giving him perceived authority and access while engaging in conduct that interferes with a federal-level murder investigation.

Defendant Martin impersonated a private investigator without holding a valid license, using this false persona to insert himself into the investigation and provide fabricated or misleading information.

Defendant Martin provided fabricated documents, including a false travel voucher for prime suspect Dallas Hart, and supplied a tampered Interpol photograph that incorrectly featured Dallas Hart's image instead of Richard Halliday's.

Defendant Martin participated in criminally impersonating the Halliday family through fake social media accounts. These accounts were used to intercept communications, harass witnesses, and obstruct the investigation into Richard Halliday's murder.

Defendant Martin collaborated with and protected Dallas Hart, the prime suspect in Richard Halliday's murder, by assisting in efforts to improperly influence media coverage and obstruct the investigation.

Defendant Martin participated in a coordinated group that sent harassing, threatening, and sexually explicit messages to the Halliday family, including disturbing messages such as threats to "fuck the soul out of Richard" and suggestions that the family kill themselves.

Defendant Martin unlawfully accessed sensitive files and information related to Richard Halliday's case and used that information to further harass and intimidate the family.

37

Defendant Martin misused and desecrated Richard Halliday's image by superimposing it onto photographs of executed death row inmates as part of a campaign to harass and intimidate the Halliday family.

Through his actions and associations, Defendant Martin participated in a civil conspiracy to obstruct justice, protect the criminal enterprise responsible for Richard Halliday's murder, and prevent the Halliday family from obtaining accountability.

**19. Defendant: Marlon Soto Hernandez (Also known as CW4 Marlon Soto / Marlon Soto-Hernandez – Former CID Special Agent, Fort Bliss; Investigator, Richard Halliday Case – Official Capacity and/or Individual Actions)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through investigative misconduct and obstruction).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday through deliberate obstruction and protection of the criminal enterprise.

4. *18 U.S.C. § 1512* – Obstruction of Justice / Witness Tampering.

5. *18 U.S.C. § 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

7. Official Misconduct / Breach of Public Trust – Using CID authority to suppress evidence, leak sensitive information, and protect prime suspects.

SPECIFIC ACTIONS BY DEFENDANT SOTO THAT GIVE RISE TO LIABILITY

CID Special Agent Assigned to Richard Halliday's Case: Defendant Soto Hernandez served as a CID Special Agent (CW4) at Fort Bliss and was the lead investigator assigned to the disappearance and murder of Fort Bliss whistleblower Soldier Richard Halliday. In this capacity, he had direct access to investigative files, forensic evidence, witness statements, and the chain of custody of critical evidence—all of which he was duty-bound to protect and pursue in good faith.

Leaking Sensitive Case Information to the Hart Family: Defendant Soto Hernandez is documented as having leaked sensitive investigative information to individuals connected to prime suspects in Richard Halliday's murder. He refused to investigate his own relative, Tavita Nuusa, who was also a CID Agent with documented conflicts of interest. This failure to investigate a compromised colleague constitutes a breach of his duty and active participation in the cover-up.

Failure to Investigate Tavita Nuusa's Misconduct: Despite clear evidence that Tavita Nuusa (whose credentials were later revoked) had a romantic relationship with Leilani Hart (mother of prime suspect Dallas Hart) and was leaking confidential case information, Defendant Soto Hernandez took no action to investigate, report, or escalate these breaches. His failure to act protected compromised personnel and allowed the obstruction of the investigation to continue.

Relationship to Defendant Marlene Gonzalez: Defendant Soto Hernandez maintains close familial ties to Judge Marlene Gonzalez, a named defendant in this complaint. Judge Gonzalez granted an unlawful name change to Leilani Hart on or about April 25, 2024, enabling her to evade accountability. This family connection raises serious questions about Defendant Soto Hernandez's impartiality and his willingness to protect individuals involved in the cover-up of Richard Halliday's murder.

Suppression of Evidence: Defendant Soto Hernandez participated in or facilitated the suppression of critical evidence in the Richard Halliday investigation, including:

    (a)    Failing to properly document or preserve forensic evidence that would have identified Richard's murderers and the trafficking of his remains.

    (b)    Suppressing evidence of Richard's whistleblower complaints regarding cartel-linked trafficking, child exploitation, and criminal activity on Fort Bliss.

    (c)    Concealing the identity, associations, and significance of Nidal Tahsin Baem, who confessed on CCTV that Richard was dead and that his remains had been found in Juárez.

Tampering with the INTERPOL Missing Person Alert: Defendant Soto Hernandez is implicated in the submission of a tampered INTERPOL missing person alert in which Dallas Hart's face was superimposed over Richard Halliday's photograph. This act of evidence tampering misdirected international law enforcement and obstructed the search for Richard's remains.

Identification of Belen Rocha: Defendant Soto Hernandez identified Belen Isabel Ortega Rocha (a named defendant) as engaging in prostitution . This identification places him at the nexus of the

adult entertainment network that Richard Halliday had been reporting on prior to his murder.

Failure to Act on Whistleblower Complaints: Defendant Soto Hernandez failed to act on whistleblower complaints filed by Judge Roger Rodriguez, who reported interference and leaks in the investigation. These complaints included allegations that CID Agent Tavita Nuusa was directly interfering with Richard Halliday's investigation and illegally accessing information from his file.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Soto Hernandez deprived Richard Halliday and his family of their constitutional rights, including:

> (a)    First Amendment Rights – Participating in retaliation against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.
>
> (b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by suppressing evidence and protecting prime suspects.
>
> (c)    Right of Access to the Courts – Obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Soto Hernandez, through his actions as a CID Special Agent and his associations with compromised personnel, knowingly conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity that included obstruction of justice, witness tampering, and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

## 20. Defendant: Jessica Veltri  (Senior Special Agent, U.S. Army Criminal Investigation Division (CID) Quantico – Individual Capacity)

### CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice (*18 U.S.C. § 1512).*

5. Civil Conspiracy.

40

6. Official Oppression *(Texas Penal Code § 39.03)*.

7. First Amendment Retaliation.

SPECIFIC ACTIONS BY DEFENDANT VELTRI THAT GIVE RISE TO LIABILITY

Defendant Jessica Veltri, a Senior Special Agent with the U.S. Army Criminal Investigation Division (CID) Quantico Violent Crime and Cold Case Unit, was assigned to the investigation into the disappearance and murder of Fort Bliss whistleblower Soldier Richard Halliday in or around May 2023.

Failed to conduct a thorough or timely investigation into Richard Halliday's murder. Despite being assigned to the case for an extended period, Defendant Veltri never visited the crime scene at Building 2479 on Fort Bliss, where Richard Halliday was allegedly murdered in the arms room.

Failed to interview key witness Judge Roger Rodriguez, who had filed formal complaints with CID and the FBI documenting interference, leaks, and tampering in Richard Halliday's investigation, including unauthorized access to Richard's file by CID Agent Tavita Nuusa and convicted criminal Leilani Hart.

Denied the Halliday Family their legal status as next of kin and victims, forcing them to submit Freedom of Information Act (FOIA) requests to obtain basic updates on their son's case. This denial violated the family's rights under the Crime Victims' Rights Act and constituted deliberate obstruction.

Misrepresented the status of Richard Halliday's case by telling the Halliday Family that the case remained open while simultaneously informing a Fort Bliss soldier (CPL Ray Brown) that the case was "closed." This inconsistency obstructed justice and interfered with potential witnesses coming forward.

Witnessed and failed to intervene when a Fort Bliss active-duty soldier (CPL Ray Brown) was threatened with an Article 15 by his commander for asserting his constitutional rights during an interview with CID agents. Defendant Veltri took no action to stop the intimidation or to document the violation.

Failed to properly report or escalate internal affairs complaints against CID Special Agent Marlon Soto for alleged tampering with Richard Halliday's investigation, despite having knowledge of such complaints.

Failed to investigate the warrantless search of the Halliday Family's home in Sarasota, Florida, by a fugitive apprehension unit in September 2020.

Through her conduct and omissions as the lead agent assigned to Richard Halliday's case,

41

Defendant Veltri contributed to the ongoing obstruction of justice and helped shield those responsible for the murder of Fort Bliss whistleblower Soldier Richard Halliday and the trafficking of his remains.

Acted in concert with other members of the criminal enterprise by failing to pursue legitimate leads, interview critical witnesses, and protect the rights of the victim's family, thereby furthering the pattern of racketeering activity that included the cover-up of Richard Halliday's murder.

### 21. Defendant: Todd Howell  (CID Special Agent, Quantico – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (Due Process, Equal Protection, and Access to the Courts)

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity)

3. Wrongful Death and Survival Action (Texas law)

4. Civil Conspiracy

5. Obstruction of Justice (federal and military law)

6. Official Oppression / Misconduct in Office

SPECIFIC ACTIONS BY DEFENDANT HOWELL THAT GIVE RISE TO LIABILITY

Defendant Todd Howell, a CID Special Agent assigned to investigate cold cases including the murder of Fort Bliss whistleblower Soldier Richard Halliday, engaged in a pattern of intentional interference, obstruction, and failure to act that protected primary suspects and obstructed justice in the Halliday investigation.

Defendant Howell confirmed during a telephone conference that there had been tampering with Richard Halliday's official investigation file but failed to document this critical information or pursue it as a lead, despite its direct relevance to the murder investigation.

Defendant Howell failed to disclose his personal knowledge of and prior contact with primary suspects in Richard Halliday's murder, including James Courtney Hart, Leilani Hart, and Dallas W. Hart. Howell had lived in Hawaii and possessed personal knowledge of the Hart family, creating a clear conflict of interest that he never disclosed to the Halliday family or in the investigation.

Defendant Howell intentionally and maliciously dismissed key physical evidence, including the tampered yellow Interpol notice photograph of Richard Halliday. The photo — supplied by Fort Bliss

42

CID Agent Tavita Nuusa — did not depict Richard Halliday. Facial recognition analysis confirmed that the measurements matched Dallas W. Hart, the prime suspect and Richard's platoon leader, rather than Richard himself. Howell dismissed this evidence despite its significance.

Defendant Howell failed to follow up on or initiate an internal affairs investigation into the official whistleblower complaint filed by judicial officer Judge Roger Rodriguez, who alleged that CID Agent Tavita Nuusa was directly interfering with Richard Halliday's investigation and illegally accessing information from his file. No internal affairs investigation was ever conducted despite corroborating evidence.

Defendant Howell failed to act on credible evidence that Tavita Nuusa (who had his badge removed in December 2020 and was deemed unstable by Fort Bliss CID) was in a dating relationship with Leilani Hart and was related to both Leilani Hart and Dallas Hart — the prime suspects in Richard Halliday's murder.

Defendant Howell failed to investigate or address the fact that Leilani Hart had been convicted of false reporting to law enforcement and had a documented history of harassment, domestic abuse, and violations of restraining orders, as well as her sworn FBI-notarized affidavit confessing to multiple serious crimes, including possession of child pornography and failure to report the sexual assault of a child in her home.

Defendant Howell's name appeared on a Facebook page that was impersonating the Halliday family and engaging in criminal conduct, including harassment and threats against the family. Despite the family's reports, Howell failed to properly address or investigate his alleged association with this criminal activity that was interfering with the Halliday investigation.

Defendant Howell repeatedly failed to pursue or document multiple leads and pieces of evidence provided by the Halliday family, including evidence of obstruction, tampering with official records, and connections between primary suspects and the compromised Fort Bliss CID office.

Through his actions and omissions, Defendant Howell deprived the Halliday family of their constitutional rights to due process, equal protection, and meaningful access to justice by protecting primary suspects, failing to investigate credible evidence of obstruction, and allowing the cover-up of Richard Halliday's murder to continue.

Defendant Howell's pattern of non-disclosure, dismissal of key evidence, failure to pursue internal affairs complaints, and association with individuals tied to the primary suspects constituted intentional interference with the criminal investigation and contributed to the ongoing obstruction of

justice in the murder of a U.S. Army whistleblower.

### 22. Defendant: Conal L. Whetten (FBI Assistant Special Agent in Charge (ASAC), El Paso Field Office – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through obstruction and retaliation).

2. 18 U.S.C. § 1962(c) & (d) – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice and witness tampering).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday through deliberate obstruction and protection of the criminal enterprise.

4. *18 U.S.C. § 1512* – Obstruction of Justice / Witness Tampering.

5. *18 U.S.C. § 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

7. Official Misconduct / Breach of Public Trust – Using FBI authority to suppress evidence, leak sensitive information, and protect compromised personnel.

8. First Amendment Retaliation – Participating in retaliation against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.

9. *18 U.S.C. § 4* – Misprision of Felony (concealing knowledge of felonies, including cartel trafficking, murder, and kidnapping).

10. *18 U.S.C. § 641* – Misappropriation of Public Funds – Misuse of government resources (including the cartel plane) for unauthorized operations.

11. Treason *(18 U.S.C. § 2381)* – Aiding and abetting enemies of the United States by providing material support, intelligence, and operational assistance to a cartel-linked terrorist network operating within federal institutions. By leaking Richard Halliday's identity to the Sinaloa/Juárez Cartel, Whetten provided aid and comfort to an organization designated as a Foreign Terrorist Organization (FTO), directly resulting in the murder of a U.S. Army soldier. His leadership of the rogue El Mayo kidnapping operation—conducted without federal

authorization, extradition orders, or judicial oversight—constitutes a betrayal of his oath as a federal law enforcement officer and an act of war against the sovereignty of Mexico.

SPECIFIC ACTIONS BY DEFENDANT WHETTEN THAT GIVE RISE TO LIABILITY

FBI Assistant Special Agent in Charge (ASAC), El Paso Field Office: Defendant Whetten served as an Assistant Special Agent in Charge (ASAC) for the FBI's El Paso Field Office. In this capacity, he held significant supervisory authority over FBI operations in the El Paso region, including investigations into federal crimes, cartel activity, and matters connected to the Fort Bliss whistleblower Soldier Richard Halliday. His position placed him at the nexus of federal law enforcement efforts that have been documented as obstructing justice in the Halliday case.

Confession to Leading Cartel Operations and the El Mayo Kidnapping: According to the Halliday family's documented allegations, Defendant Whetten has confessed to leading and participating in the rogue FBI/El Paso Cartel operation to kidnap Ismael "El Mayo" Zambada García, co-founder of the Sinaloa Cartel. This operation was conducted without notice to Mexico City's federal government, no extradition order, no judges, and no international order of cooperation—just the El Paso Cartel plane. The aircraft used in the kidnapping, a Beechcraft King Air, was later donated by the FBI to the War Eagles Air Museum in Santa Teresa, New Mexico, and placed on public display.

The El Paso Cartel Plane – Tampered Evidence: The aircraft used to transport El Mayo to the U.S. has been documented as having multiple irregularities consistent with cartel operations, including:

(a) Serial number ALTERED – FAKE

(b) License plate CLONED – N287KA stolen identity from another aircraft

(c) Emergency locator REMOVED – No ELT transmitter (illegal)

(d) Fuel system MODIFIED – Hidden fuel tank installed (cartel long-range smuggling modification)

(e) Voice recorder GONE – No cockpit recording

(f) Engine data plates – Removed

(g) Navigation systems disabled

The decision to display this aircraft at a public museum—while it remains evidence in an active federal and international investigation—constitutes tampering with evidence and a deliberate effort to obstruct justice.

Leaked Richard Halliday's Identity to the Cartel: According to the Halliday family's documented allegations, Defendant Whetten was "the Mexican Cartel's 'inside man'" who "leaked

45

Richard's identity to the Cartel, putting a target on the young whistleblower soldier's back." This leak occurred not only because Richard exposed ongoing drug, gun, and child trafficking operations, but also because he reported direct links from Fort Bliss to the orchestration of the 2019 Cielo Vista Walmart mass shooting. By leaking Richard's identity to the cartel, Whetten directly enabled the retaliation that resulted in Richard's premeditated murder.

Confirmation that Maru Campos Committed Treason: Defendant Whetten has corroborated that Maru Campos, the Governor of Chihuahua, committed treason. Public records confirm that Campos is being investigated by Mexico's Fiscalía General de la República (FGR) for her role in permitting the presence and operations of foreign agents—including the CIA and FBI—in Chihuahua without federal authorization. Mexican legislators from Morena and the PT have publicly accused Campos of "traición a la patria" (treason to the nation), with some stating she could face up to 40 years in prison. The treason allegations center on Campos's acknowledgment of collaboration and presence of agencies such as the FBI and DEA in Chihuahua, as well as her admission that state authorities participated in extraditions without federal authorization. This treasonous treaty with Texas Governor Greg Abbott is now being investigated by the FGR in connection with the dead CIA agent scandal and other multiple rogue operations.

Maru Campos as the Sinaloa Cartel Proxy: The allegations confirm that Maru Campos is the "El Chapo" Sinaloa Cartel proxy. By signing the treasonous treaty with Texas Governor Greg Abbott, Campos enabled the El Paso Cartel plane operation that took down "El Mayo" — their remaining competition for trafficking and huachicol (fuel theft). This operation was designed to eliminate competition and consolidate cartel control over trafficking routes and fuel theft operations.

Connection to the FBI Agents in Question: Defendant Whetten's network includes the following FBI agents who have been implicated in the obstruction of justice in the Halliday case:

(a)    George Torres – FBI Special Agent with undisclosed conflicts of interest; married to Dr. Melissa Mendez, whose colleague is Alexis Maiella (sister-in-law of Patrick Crusius); falsely informed EPISD Police that the FBI had accepted and declined an investigation into Manuel Chavira.

(b)    Todd Petkus – FBI Special Agent who swore out a criminal complaint in an unrelated bribery case; implicated in the broader network of obstruction in the Halliday case as part of the Frost–Petkus–Esparza–Hicks axis.

(c)    David Scott Frost – Double-hatted senior NCO at Fort Bliss and lead FBI

investigator on the Walmart mass shooting case; active in the Chihuahua Prosecutor's Office (Fiscalía); implicated in ordering the burial of the Halliday case.

(d)    Jesus "Eddie" Nieto Jr. – FBI Supervisory Special Agent with direct knowledge of Richard Halliday's communications; failed to protect Richard from retaliation; sold his home to individuals connected to Angela Kocherga (El Paso Matters), creating a conflict of interest.

(e)    Michael G. Maiella Jr. – Simultaneously worked in the El Paso FBI Field Office, Walmart cybersecurity, and the DA's Office during the Walmart shooting probe; continues to work in the FBI office with Frost and Petkus; part of the Maiella family network that concealed Patrick Crusius's ties to El Paso.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Whetten deprived Richard Halliday and his family of their constitutional rights, including:

(a)    First Amendment Rights – Participating in retaliation against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.

(b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by suppressing evidence and obstructing the investigation.

(c)    Right of Access to the Courts – Obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Whetten, through his actions as FBI ASAC, his confession to leading the El Mayo kidnapping operation, his leaking of Richard's identity to the cartel, his corroboration of Maru Campos's treason, and his coordination with the broader network of compromised officials (including Torres, Petkus, Frost, Nieto, and Maiella), knowingly conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity that included obstruction of justice, witness tampering, and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

**23. Defendant: Cody Carter (Texas Ranger, Company E – Official Capacity and/or Individual Actions)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice *(18 U.S.C. § 1512)*.

5. Civil Conspiracy.

6. Official Oppression *(Texas Penal Code § 39.03)*.

7. First Amendment Retaliation.

SPECIFIC ACTIONS BY DEFENDANT CARTER THAT GIVE RISE TO LIABILITY

Defendant Cody Carter, acting under color of state law as a Texas Ranger / DPS officer, deprived the Halliday family and related whistleblowers of their clearly established constitutional rights, including First Amendment rights to free speech and petition, and Fifth and Fourteenth Amendment rights to due process and equal protection, by engaging in politically motivated investigations, selective enforcement, and obstruction of legitimate criminal complaints related to the murder of SPC Richard Halliday.

Defendant Carter participated in the weaponization of Texas Rangers Company E to attack and obstruct individuals attempting to expose misconduct within the El Paso Independent School District Police Department, including issues of impersonating a peace officer and depriving honest services in connection with Richard Halliday's case.

Defendant Carter's actions were influenced by his wife's position under Regional DPS Director José Sanchez, creating additional conflicts of interest and contributing to the politicization and infiltration of Company E.

Defendant Carter participated in the scheme to obstruct the Halliday family's criminal complaints by allowing conflicted Texas Ranger Gustavo Sanchez to remain on the case, despite clear conflicts of interest involving Sanchez's brother-in-law, Manuel Chavira.

Defendant Carter engaged in or supported the interference with the Halliday family's complaints, including the failure to properly investigate or recuse conflicted personnel, thereby obstructing justice in the murder of Fort Bliss whistleblower SPC Richard Halliday.

Defendant Carter contributed to the broader pattern of obstruction by Texas Rangers Company E, which has covered up official misconduct, obstructed investigations into public corruption, and

48

compromised the integrity of law enforcement in matters directly connected to Richard Halliday's murder and the protection of conflicted individuals.

Through his conduct, Defendant Carter helped advance the objectives of the enterprise by interfering with legitimate whistleblower complaints, protecting conflicted officials, and obstructing the Halliday family's pursuit of justice for over two years.

Defendant Cody Carter's conduct caused SPC Richard Halliday and his family to suffer severe harm, including the continued obstruction of justice and concealment of evidence related to Richard's murder. These claims survive and are brought on behalf of the estate.

### 24. Defendant: Gustavo Sanchez (Texas Ranger, Company E – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of law through obstruction and retaliation).

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday through deliberate obstruction and protection of the criminal enterprise.

4. Obstruction of Justice *(18 U.S.C. § 1512)* – Witness tampering and narrative control.

5. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

6. Official Misconduct / Breach of Public Trust – Using Texas Ranger authority to protect compromised individuals and suppress evidence.

7. Conflict of Interest / Failure to Recuse – Knowingly remaining on a case involving his brother-in-law and close family connections.

SPECIFIC ACTIONS BY DEFENDANT SANCHEZ THAT GIVE RISE TO LIABILITY

Texas Ranger Assigned to Investigations Related to the Halliday Case: Defendant Gustavo Sanchez served as a Texas Ranger assigned to Company E, a position that gave him authority over criminal investigations, including matters related to the El Paso Independent School District (EPISD) and the murder of Fort Bliss whistleblower Soldier Richard Halliday. His position placed him at the center of law enforcement efforts that have been documented as obstructing justice in the Halliday

49

case.

Undisclosed Conflict of Interest with EPISD Police Chief Manuel Chavira: Defendant Sanchez is the brother-in-law of Manuel "Manny" Chavira, who served as the Chief of Police for the El Paso Independent School District (EPISD) despite lacking the proper licensure as a peace officer at the time of his appointment. Despite this direct familial relationship, Defendant Sanchez failed to disclose this conflict of interest and remained on investigations involving EPISD personnel and matters directly connected to the Halliday case. The Halliday family has documented that Chavira's appointment was improper and that he was "not a licensed peace officer at the time of his appointment."

Connection to Nidal Tahsin Baem and the Broader Criminal Enterprise: Defendant Sanchez is related to Nidal Tahsin Baem, a confirmed Palestinian arms dealer, cartel operative, and FBI impersonator who confessed on CCTV that Richard Halliday was dead and that his remains had been found in Juárez. Baem is the father-in-law of LTC Bradford Bugado, who served as G3 (Operations Officer) for the 32nd Army Air and Missile Defense Command at Fort Bliss—the exact unit where Richard Halliday was assigned when he was murdered in the arms room of building 2479. Defendant Sanchez's family connection to Baem places him squarely within the criminal enterprise responsible for Richard's murder and cover-up.

Connection to the MRE Theft Ring and Western Frontier Trading LLC: As documented in the federal jury conviction of Joseph Lavar Davis for stealing over $1.12 million worth of MREs from Fort Bliss, the warehouse operator involved in the scheme, John Mark Broberg, is the brother of Erik Broberg—owner of Western Frontier Trading LLC. Nidal Tahsin Baem was confirmed working at this business, which was flagged by CBP for suspicious transactions and subjected to multiple government audits. Defendant Sanchez's connection to Baem places him in proximity to this military supply theft and trafficking environment—the exact environment Richard Halliday was murdered for exposing.

Failure to Recuse from Investigations Involving His Family Network: Despite documented conflicts of interest involving his brother-in-law Manuel Chavira, his connection to Nidal Baem, and the broader Chavira-Baem network, Defendant Sanchez failed to recuse himself from investigations related to the Halliday case, the EPISD Police Department, and matters involving witness Judge Roger Rodriguez. Judge Rodriguez had been assigned to order the arrest of Manuel Chavira, creating a direct conflict for Sanchez that he never disclosed or addressed.

Protection of Compromised Law Enforcement Personnel: Defendant Sanchez's failure to recuse and his continued involvement in investigations allowed him to protect compromised individuals,

including:

    (a)    Manuel Chavira – His brother-in-law, who was improperly appointed as EPISD Police Chief.

    (b)    Cody Carter – A Texas Ranger who engaged in politically motivated targeting.

    (c)    John Briggs – An Assistant District Attorney who targeted the Halliday investigation.

    (d)    Bill Hicks – A District Attorney who failed to properly install and obstructed justice.

Weaponization of the Texas Rangers: According to the Halliday family's documented concerns, the Texas Rangers under Defendant Sanchez's influence have been "weaponized to attack anyone attempting to expose misconduct within the El Paso Independent School District Police Department." This weaponization was designed to protect compromised officials, obstruct investigations, and retaliate against whistleblowers and Gold Star families seeking accountability.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Sanchez deprived Richard Halliday and his family of their constitutional rights, including:

    (a)    First Amendment Rights – Participating in retaliation against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.

    (b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by suppressing evidence and protecting prime suspects.

    (c)    Right of Access to the Courts – Obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Sanchez, through his actions as a Texas Ranger, his familial relationship to Nidal Baem and Manuel Chavira, and his protection of the criminal enterprise, knowingly conducted and conspired to conduct the affairs of the enterprise through a pattern of racketeering activity that included obstruction of justice and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

**25. Defendant: Samuel Medrano  (Also known as Judge Sam Medrano – Presiding Judge, 409th District Court, El Paso – Official Capacity and/or Individual Actions)**

51

## CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (Due Process and Equal Protection)
2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity)
3. Civil Conspiracy
4. Obstruction of Justice (federal and state law)
5. Official Misconduct / Judicial Misconduct
6. Abuse of Official Capacity

## SPECIFIC ACTIONS BY DEFENDANT MEDRANO THAT GIVE RISE TO LIABILITY

Defendant Judge Samuel Medrano presided over the 2019 Walmart mass shooting case and engaged in repeated acts of judicial misconduct, including violating ex parte communication rules, issuing improper and unlawful orders, and demonstrating favoritism toward defense counsel Joe Spencer.

Defendant Medrano unlawfully appointed Penny Hamilton to the El Paso Criminal Law Magistrate Court in violation of Article 5, Section 30 of the Texas Constitution, which requires judges with countywide jurisdiction to be elected rather than appointed. He then allowed her to magistrate and order the detention of Patrick Crusius, violating the defendant's due process rights.

Defendant Medrano participated in ex parte communications and backroom deals with defense attorney Joe Spencer to delay and interfere with the state prosecution of the Walmart mass shooting case, including agreeing to defer jurisdiction to federal court without notifying the District Attorney's Office.

Defendant Medrano allowed defense counsel Joe Spencer to demand and receive an "open checkbook" of unlimited taxpayer funds for the defense while simultaneously delaying the case for years, resulting in the misuse of public resources.

Defendant Medrano issued an irregular and overly broad gag order in the Walmart case that silenced criticism while he himself made public statements to the media during active proceedings, violating Canon 3(B)(9) of the Texas Code of Judicial Conduct.

Defendant Medrano permitted the prejudicial public display of defendant Patrick Crusius in full restraints and prison attire during hearings that were televised, undermining the presumption of innocence and influencing the potential jury pool.

Defendant Medrano failed to address or sanction documented prosecutorial misconduct,

including the unauthorized participation of John Briggs in the case after he had been removed by the District Attorney's Office, and the conflict of interest involving former District Attorney Jaime Esparza.

Defendant Medrano is married to Bernadette Medrano, an Administrative/Support Manager in the El Paso County District Clerk's Office with access to case assignment systems. This created an inherent institutional conflict of interest within the courthouse.

Defendant Medrano is part of the Carzoli-Medrano family network, which includes family members who have been directly linked to the targeting and retaliation against Richard Halliday and his family.

Defendant Medrano failed to recuse himself despite clear conflicts of interest and instead used his judicial authority to retaliate against whistleblowers, including Judge Roger Rodriguez, who reported his misconduct.

Through his actions and omissions as presiding judge, Defendant Medrano contributed to the obstruction of justice in the Walmart mass shooting case and participated in a broader system that protected members of the criminal enterprise while obstructing accountability in matters connected to Richard Halliday's murder.

### 26. Defendant: Humberto Acosta  (El Paso County Criminal Jail Magistrate / Presiding Judge)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process and Equal Protection
2. *18 U.S.C. § 1962(c) & (d)* – RICO
3. Violation of the *Texas Constitution, Article 5, Sections 15 and 28* – Illegitimate Judicial Authority
4. Obstruction of Justice *(Texas Penal Code § 36.06 and/or common law)*
5. Civil Conspiracy
6. Official Oppression *(Texas Penal Code § 39.03)*
7. Intentional Infliction of Emotional Distress (IIED) – Texas Common Law

SPECIFIC ACTIONS BY DEFENDANT ACOSTA THAT GIVE RISE TO LIABILITY

- Defendant Acosta holds office as Presiding Magistrate Judge of the El Paso Criminal Law Magistrate Court, a position exercising county-wide jurisdiction granted by the Texas Legislature in 2015.

53

Under the Texas Constitution, Article 5, Sections 15 and 28, judges exercising county-wide jurisdiction must be elected by the voters, not appointed. Defendant Acosta was appointed, not elected, rendering his tenure constitutionally invalid and his judicial acts illegitimate.

Defendant Acosta and other appointed magistrates (including Ruben Nunez, Linda Estrada, Sara Priddy, Anthony Aun, and Sheldon Myers) are therefore exercising judicial authority in violation of the Texas Constitution. Defendant Acosta's appointment was facilitated by Sylvia Borunda Firth during her tenure as El Paso City Attorney, who participated in the unlawful appointments and now sits on the Texas State Commission on Judicial Conduct — creating a direct conflict of interest.

As a judicial officer, Defendant Acosta has engaged in a pattern of conduct that obstructed justice and protected the criminal enterprise. This includes:

Routinely dismissing or mishandling cases in ways that benefited members of the enterprise and undermined accountability.

On or about March 31, 2024, ordering the release of over 200 migrants arrested after a border stampede, citing that the District Attorney's Office was "apparently not ready to go to trial."

Creating a revolving door of justice that released violent offenders and dismissed cases against cartel-connected individuals shortly after arrest.

These actions contributed to a culture of impunity that allowed Richard Halliday's murder to remain unaddressed, Fort Bliss trafficking operations to continue, and whistleblowers to be silenced.

Defendant Acosta acted in concert with Sylvia Borunda Firth and former District Attorney Yvonne Rosales to frustrate Plaintiffs' access to justice. Ms. Borunda Firth obstructed complaints regarding Defendant Acosta's illegitimate appointment and participated in the unlawful appointments while serving as City Attorney. She now sits on the Texas State Commission on Judicial Conduct while shielding the very judge she helped install.

Defendant Acosta's appointment and judicial acts violate the Texas Constitution, Article 5, Sections 15 and 28. Every judicial act he has performed — bond hearings, probable cause determinations, dismissals, and arraignments — is constitutionally void.

Defendant Acosta unlawfully magistrated Richard Halliday without authority for a fake DUI in furtherance for the above conspiracy.

These actions deprived Richard Halliday and his family of due process and equal protection under the Fourteenth Amendment by creating a two-tier justice system: one that protects cartel-connected individuals and another that obstructs whistleblowers and victims.

Defendant Acosta, together with Sylvia Borunda Firth, Jaime Esparza and other appointed magistrates, conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity. His racketeering acts include:

(a)    Illegitimate exercise of judicial authority in violation of the Texas Constitution.

(b)    Pattern of dismissing cases and releasing individuals connected to the enterprise.

(c)    Obstruction of justice and participation in a scheme that disenfranchised voters while protecting the criminal enterprise.

## 27. Defendant: John Briggs (Assistant District Attorney, 34th Judicial District Attorney's Office – Individual Capacity)

### CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. Obstruction of Justice *(18 U.S.C. § 1512).*

5. Civil Conspiracy.

6. Official Oppression *(Texas Penal Code § 39.03).*

7. First Amendment Retaliation.

### SPECIFIC ACTIONS BY DEFENDANT BRIGGS THAT GIVE RISE TO LIABILITY

Defendant Briggs worked alongside Michael G. Maiella Jr. in the 34th Judicial District Attorney's

Defendant Briggs knew of Patrick Crusius's family connection to the DA's Office (via Michael G. Maiella Jr.) and actively participated in covering it up to manipulate the case for political gain.

Defendant Briggs Briggs collaborated with Bill Hicks, who was also the attorney for Perches Funeral Homes — the same empire tied to the Plenitud narco-crematorium where Fort Bliss whistleblower Richard Halliday's remains were allegedly trafficked for disposal.

Defendant Briggs destroyed Loretta Lynn Hewitt's Investigation — Lead prosecutor Loretta

Lynn Hewitt testified in court that Briggs and Hicks destroyed her investigation into Patrick Crusius's background.

As Assistant District Attorney, Defendant Briggs Defendant Briggs targeted Judge Roger Rodriguez, the whistleblower in the Richard Halliday murder case, to prevent him from exposing the truth about the Walmart shooting cover-up, the murder of Richard Halliday, to intimidate him, to silence him, retaliate against him for reporting corruption, and obstruct the evidence he had uncovered.

Defendant Briggs took specific actions that shielded individuals connected to the Hart family and the Fort Bliss trafficking network from accountability.

### 28. Defendant: Bill Hicks  (El Paso District Attorney – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Constitutional Rights (Due Process, Equal Protection, and Access to the Courts)
2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity)
3. Wrongful Death and Survival Action (Texas law)
4. Civil Conspiracy
5. Obstruction of Justice (Texas and federal law)
6. Official Oppression *(Texas Penal Code § 39.03)*

SPECIFIC ACTIONS BY DEFENDANT HICKS THAT GIVE RISE TO LIABILITY

Defendant Bill Hicks, while serving as District Attorney of El Paso County, participated in and facilitated the protection of the criminal enterprise responsible for the murder of Fort Bliss whistleblower Soldier Richard Halliday and the ongoing cover-up of cartel-linked trafficking operations at Fort Bliss.

Defendant Hicks appointed Luis Rene Diaz as Chief of Staff of the 34th Judicial District Attorney's Office despite Diaz having a prior criminal history that included indictment and arrest for extortion and public fraud in Doña Ana County, New Mexico. Hicks waived the required background check for this appointment, allowing an individual with serious criminal allegations to occupy a senior position of public trust within the office responsible for prosecuting the Walmart mass shooting case.

Defendant Hicks participated in key decision-making processes regarding the Walmart mass

shooting prosecution while deliberately sidelining the designated Trial Team Chief, Loretta Lynn Hewitt, and instead consulting primarily with Luis Rene Diaz and John Briggs. Lead prosecutor Hewitt testified that Hicks and Briggs destroyed her investigation into Patrick Crusius's background and made strategic decisions based on how they would politically benefit Hicks rather than on the pursuit of justice.

Defendant Hicks was part of the inner circle within the 34th Judicial District Attorney's Office that had knowledge of "The Maiella Connection" — the direct familial relationship between Michael G. Maiella (an employee of the DA's Office) and Patrick Crusius — yet participated in or acquiesced to the concealment of this critical conflict of interest from the court, the public, and the media.

Defendant Hicks collaborated with and protected the Perches Funeral Homes network, the same empire tied to the Plenitud narco-crematorium where Fort Bliss whistleblower Richard Halliday's remains were allegedly trafficked for disposal. This collaboration contributed to shielding the criminal enterprise responsible for the murder and desecration of Richard Halliday.

Defendant Hicks's office is alleged to have withheld mitigating evidence regarding Patrick Crusius's mental health, including interviews with two former neighbors, in violation of *Brady v. Maryland*. This withholding of evidence was part of a broader pattern of suppressing information that could have exposed connections between the Walmart mass shooting, cartel-linked trafficking at Fort Bliss, and the murder of Richard Halliday.

Defendant Hicks participated in the broader pattern of obstruction that included suppressing evidence of the cartel-linked trafficking operations Richard Halliday was exposing, promoting false narratives, retaliating against whistleblowers and Gold Star families, and protecting individuals and networks responsible for Richard's murder and the cover-up.

Through his actions and omissions as District Attorney, Defendant Hicks deprived the Halliday family of their constitutional rights, including access to the courts, due process, and equal protection, by participating in a coordinated effort to suppress evidence, obstruct justice, and protect the criminal enterprise responsible for the murder of Richard Halliday.

Defendant Hicks's conduct, including the appointment of Luis Rene Diaz, the sidelining of the lead prosecutor in the Walmart case, the concealment of the Maiella Connection, and the protection of the Perches funeral home network, contributed to a systemic pattern of obstruction that shielded the criminal enterprise, suppressed the truth about Richard Halliday's murder, and retaliated against the Halliday family for seeking accountability.

**29. Defendant: James Bonneau Montoya  (District Attorney, 34th Judicial District – El Paso, Hudspeth, and Culberson Counties – Official Capacity)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts.

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity).

3. Wrongful Death and Survival Action (Texas law).

4. *18 U.S.C. § 1512* – Obstruction of Justice / Witness Tampering.

5. *18 U.S.C. § 241 & 242* – Conspiracy Against Rights and Deprivation of Rights Under Color of Law.

6. Official Oppression *(Texas Penal Code § 39.03)* – Abuse of official capacity to harass, intimidate, and retaliate against whistleblowers and Gold Star families.

7. Malicious Prosecution – Knowingly initiating, prolonging, or failing to correct wrongful prosecution and suppression of evidence against SPC Richard Halliday.

8. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

9. Tampering with Government Records / Spoliation of Evidence – Destruction, alteration, or concealment of official records related to Richard Halliday's murder and the Walmart mass shooting investigation.

10. Breach of Fiduciary Duty / Misconduct in Office – Using the authority of the District Attorney's Office for personal, political, and criminal ends rather than the pursuit of justice.

11. Treason *(18 U.S.C. § 2381)* – Aiding and abetting enemies of the United States by providing material support and protection to a cartel-linked terrorist network operating within federal and state institutions.

SPECIFIC ACTIONS BY DEFENDANT MONTOYA THAT GIVE RISE TO LIABILITY

Unlawful Appointment and Illegal Assumption of Office: Defendant Montoya improperly assumed the position of District Attorney for the 34th Judicial District without valid constitutional authority, rendering all actions taken in his official capacity legally void and constituting a fraud upon the court and the public. His appointment was facilitated through a corrupt process that bypassed statutory requirements, and he was enabled by the same compromised network (including Bill Hicks,

John Briggs, and Luis Rene Diaz) that had previously obstructed the Walmart mass shooting prosecution and the Halliday investigation. Defendant Montoya's unlawful appointment mirrors the pattern of illegitimate judicial appointments documented elsewhere in this complaint, including the appointment of Judge Humberto Acosta and other magistrates in violation of the Texas Constitution.

Unlawful Endorsement and Campaign Coordination: On or about February 20, 2026, Defendant Montoya, while serving as the acting District Attorney, posted an endorsement of judicial candidate Frances Michelle Maldonado Engelbaum—the wife of Defendant Mathew Engelbaum— stating: "Frances is a prosecutor at heart. She will be the kind of judge we need in this community to keep El Paso safe and ensure justice for victims."* This endorsement was issued despite the fact that Montoya's own unlawful appointment to the DA's office was pending and unresolved, and despite Maldonado's documented role in the obstruction of the Halliday investigation during her tenure as Trial Team Chief in the same DA's Office. Montoya's endorsement was accompanied by the phrase *"2028 stamp,"* a reference that has been interpreted as a political signal to the network.

Public Endorsement of Engelbaum–Maldonado Network: Defendant Montoya's public endorsement of Frances Maldonado—the wife of Defendant Engelbaum—constitutes an official act that validates and protects the Engelbaum–Maldonado–Baem network. This endorsement was made with full knowledge that the Engelbaum household is socially and familially tied to the Baem family, including Nadia Jazmin Nidal Baem (daughter of cartel operative Nidal Tahsin Baem), who is a close friend of Frances Maldonado's brother, Michael Maldonado. Montoya's endorsement of Maldonado is, in effect, an endorsement of the same terrorist network that murdered Richard Halliday and orchestrated the cover-up.

Personal Friendship with Anthony Ray Acuna and Obstruction of the Cordero Murder Investigation: Defendant Montoya maintained a documented personal friendship with Anthony Ray Acuna, the shooter who murdered retired FBI Agent Julio Cordero on or about August 22, 2024. Despite this clear and undisclosed conflict of interest, Montoya participated in discussions and decision-making regarding the prosecution of Acuna and actively advocated for charges to be dismissed or reduced, at the behest of Michael P. Gonzales (FOP President), who had unlawfully entered the crime scene and coached the shooter on what to say to investigators. Montoya's failure to recuse himself and his efforts to shield Acuna from full accountability constitute obstruction of justice and official misconduct. This pattern of protection directly parallels the protection afforded to Dallas Hart and the broader Hart family network in the Halliday case.

59

Coordination with Michael P. Gonzales to Protect the Enterprise: Defendant Montoya worked in concert with Michael P. Gonzales (EPISD Police Officer and FOP President) to obstruct justice in the Cordero murder investigation and to provide institutional protection for individuals connected to the broader criminal enterprise, including Amber L. Chase and other individuals who engaged in harassment and intimidation of the Halliday family. Montoya and Gonzales coordinated efforts to ensure that charges against Acuna were minimized and that the network's members remained shielded from scrutiny.

Leaking of Active Federal Cases to the Engelbaum–Maldonado Network: Defendant Montoya is credibly alleged to have leaked information regarding active federal cases—including matters connected to the Richard Halliday murder investigation and the Walmart mass shooting case—to AUSA Mathew Engelbaum and Frances Maldonado Engelbaum. This leaking of sensitive prosecutorial information constitutes obstruction of justice and a breach of prosecutorial ethics. The purpose of these leaks was to provide the Engelbaum–Maldonado–Baem network with advance intelligence regarding ongoing investigations, allowing them to obstruct, delay, or influence the course of justice. This mirrors the pattern documented with CID Agent Tavita Nuusa, who leaked sensitive case files to Leilani Hart.

Protection of Nidal Tahsin Baem and the Fort Bliss Command Compromise: Despite overwhelming evidence that Nidal Tahsin Baem (an arms dealer, FBI impersonator, and cartel operative) confessed on CCTV that Richard Halliday was dead and that his remains were in Juárez, Defendant Montoya took no action to charge Baem, investigate his ties to Fort Bliss command (LTC Bradford Bugado), or pursue leads regarding Baem's involvement in the trafficking of Richard's remains. This deliberate inaction constituted protection of the cartel-linked network and obstruction of justice. The network's efforts to suppress Baem's confession included the coordinated efforts of LTC Bradford Bugado, MG Sean Bernabe, FBI ASAC Conal Whetten, and AUSA Mathew Engelbaum, all of whom were embedded in the same institutional web.

Failed to take any meaningful action against Dallas W. Hart (the prime suspect in Richard Halliday's murder) or Leilani Hart, despite substantial evidence of their involvement in the murder, obstruction of justice, witness intimidation, and possession of Richard's stolen property (including his credit cards). Defendant Montoya also failed to act on Leilani Hart's sworn affidavit confessing to serious crimes, including possession of child pornography, incest, and failure to report the sexual assault of a child.

Continuation of Policies and Practices that Obstructed the Halliday Investigation: Upon

assuming the office, Defendant Montoya inherited and continued the policies and practices of his predecessors (Jaime Esparza and Bill Hicks) that were specifically designed to suppress evidence, protect compromised law enforcement personnel, and obstruct the Halliday family's pursuit of justice. These practices included:

Failing to properly investigate or prosecute credible leads regarding the murder of SPC Richard Halliday.

(a)      Withholding exculpatory and inculpatory evidence from the Halliday family.

(b)      Refusing to convene grand juries or issue subpoenas to compel testimony from key witnesses (including Nidal Tahsin Baem, Dallas Hart, and Leilani Hart).

(c)      Allowing Luis Rene Diaz and John Briggs, both of whom were part of the corrupt inner circle, to continue wielding influence over critical decisions despite their documented roles in the cover-up.

Protection of the Hart Family Network and Prime Suspects: Defendant Montoya failed to take any meaningful action against Dallas W. Hart (the prime suspect in Richard Halliday's murder) or his mother Leilani Hart, despite overwhelming evidence of their involvement in the murder, obstruction of justice, witness intimidation, and possession of stolen property (Richard's credit cards). Montoya also failed to act on Leilani Hart's sworn affidavit confessing to multiple serious crimes, including possession of child pornography and failure to report the sexual assault of a child. This failure to prosecute is consistent with the pattern of protection documented in the case of William Alfredo Molinar, who received a shockingly lenient sentence from Judge Sam Medrano despite a conviction for continuous sexual assault of a child.

Suppression of the "Maiella Connection" and Related Conflicts of Interest: Defendant Montoya, like his predecessors, participated in the ongoing concealment of the direct familial relationship between Michael G. Maiella Jr. (employee of the DA's Office and FBI El Paso Field Office), Michael F. Maiella (Federal Courthouse Manager), and Walmart mass shooter Patrick Crusius. Montoya failed to disclose or remedy this conflict of interest, thereby continuing the obstruction of justice in the Walmart case and shielding the same network that was connected to Richard Halliday's murder. This suppression of the Maiella–Crusius family connection was a key component of the coordinated effort to weaponize the Walmart mass shooting against President Trump and interfere in the 2020 election.

Retaliation Against Whistleblowers and Gold Star Families: Defendant Montoya used the

61

authority of his office to retaliate against individuals who sought to expose the truth about Richard Halliday's murder, including:

(a)    Refusing to meet with or provide updates to the Halliday family.

(b)    Failing to act on whistleblower complaints filed by Judge Roger Rodriguez.

(c)    Continuing the unlawful and retaliatory ban against Judge Rodriguez that was issued by Fort Bliss command.

(d)    Intimidating witnesses and potential witnesses through the threat of prosecution or other official actions.

Subordination of Justice to Political and Personal Agendas: Defendant Montoya consistently prioritized political and personal considerations over the pursuit of justice, as demonstrated by:

(a)    His protection of Anthony Ray Acuna due to personal friendship.

(b)    His failure to prosecute individuals connected to the Hart family and the broader criminal enterprise.

(c)    His continuation of the corrupt practices of the Bill Hicks/Jaime Esparza era.

(d)    His use of the DA's office to shield compromised law enforcement personnel (including Michael P. Gonzales, Miguel Carzoli, and Jesus Melendez) from accountability.

(e)    His public endorsement of Frances Maldonado Engelbaum, a candidate whose husband is embedded in the same network that has been actively obstructing justice in the Halliday case.

Direct Connection to the Transnational Terror Network: Defendant Montoya's actions place him squarely within the transnational terror network responsible for:

(a)    The orchestrated and staged 2019 El Paso Walmart Mass Shooting operation and cover-up that was intentionally weaponized against President Trump to interfere in the 2020 election.

(b)    The murder, cover-up, and trafficking of Fort Bliss whistleblower Soldier Hero Richard Halliday.

(c)    The killing of the "Poisoned Pawns" hero and most decorated FBI agent Julio Cordero.

(d)    The orchestration, kidnapping operation, and illegal arrest of El Mayo Zambada without proper extradition orders.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Montoya deprived Richard Halliday and his family of their constitutional rights, including:

    (a)    First Amendment Rights – Retaliating against Richard for his protected whistleblower activity and against his family for petitioning the government for redress.

    (b)    Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by creating a two-tier justice system that protected cartel-connected individuals while obstructing victims and whistleblowers.

    (c)    Right of Access to the Courts – Suppressing evidence, intimidating witnesses, and obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Montoya, through his actions and omissions, knowingly conducted and conspired to conduct the affairs of the criminal enterprise (the association-in-fact network of compromised military, law enforcement, judicial, and media actors) through a pattern of racketeering activity that included obstruction of justice, witness tampering, official misconduct, and the protection of cartel-linked trafficking operations. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

Treason, Murder, and the Death Penalty: Defendant Montoya's actions—providing aid and comfort to a cartel-linked terrorist network that orchestrated the murder of a U.S. Army whistleblower, the staged 2019 Walmart mass shooting, and the killing of a decorated FBI agent—rise to the level of treason and murder, offenses that carry the death penalty under federal law. His betrayal of his oath as a public prosecutor constitutes one of the most egregious cases of institutional capture in U.S. history.

Used the authority of his office to retaliate against individuals who sought to expose the truth about Richard Halliday's murder, including refusing to meet with or provide updates to the Halliday Family, failing to act on whistleblower complaints filed by Judge Roger Rodriguez, and continuing the unlawful ban against Judge Rodriguez that was originally issued by Fort Bliss command.

Prioritized political and personal considerations over the pursuit of justice by protecting individuals connected to the criminal enterprise, continuing the corrupt practices of prior administrations, and shielding compromised law enforcement personnel from accountability.

Through the above actions and omissions, Defendant Montoya deprived Richard Halliday and his family of their constitutional rights, including First Amendment rights to free speech and to petition

the government, Fifth and Fourteenth Amendment rights to due process and equal protection, and the right of access to the courts. His conduct constituted knowing participation in the RICO enterprise responsible for the murder of Richard Halliday and the ongoing obstruction of justice that has denied his family accountability for over six years.

### 30. Defendant: Robert Moore  (Also known as Bob Moore – CEO/Editor of El Paso Matters – Official Capacity and/or Individual Actions)

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. Defamation / Defamation Per Se

2. Intentional Infliction of Emotional Distress (IIED)

3. Negligence / Gross Negligence

4. Civil Conspiracy

5. Obstruction of Justice (federal and state law)

6. Aiding and Abetting the criminal enterprise and cover-up

7. Fraud and Tax Evasion (including violations of 501(c)(3) status)

8. Copyright Infringement

9. Violation of the Texas Public Information Act

10. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity)

SPECIFIC ACTIONS BY DEFENDANT MOORE THAT GIVE RISE TO LIABILITY

Defendant Robert Moore, as CEO and editor of El Paso Matters, published a false and defamatory article on April 26, 2024, containing multiple false statements about Richard Halliday, including claims that he was "facing legal issues" prior to his disappearance and implying intentional misconduct, without ever contacting the Halliday family for comment.

Defendant Moore relied on Leilani Hart — a convicted criminal and prime suspect in Richard Halliday's murder — as a source while ignoring credible evidence and information repeatedly provided by the Halliday family.

Defendant Moore ignored at least 15 formal communication attempts from the Halliday family and failed to respond to a detailed cease-and-desist letter sent on June 5, 2024, outlining 17 instances of journalistic malfeasance and defamation.

Defendant Moore altered the Certificate of Formation for El Paso Matters on October 28, 2025,

in an apparent attempt to conceal its true structure as a supporting organization operating for the exclusive benefit of the El Paso Community Foundation (EPCF), doing so only after investigations into his operations became public.

Defendant Moore engaged in the unauthorized use of content from the Halliday family's social media pages without attribution or permission, constituting copyright infringement.

Defendant Moore coordinated with other defendants and members of the criminal enterprise — including individuals connected to the Hart family network and the El Paso Community Foundation — to control the public narrative, suppress evidence, and obstruct justice in both the Richard Halliday murder investigation and the Walmart mass shooting case.

Defendant Moore actively suppressed evidence that Patrick Crusius had direct family ties to the Maiella power structure in El Paso and instead promoted the false "lone white supremacist" narrative to politically attack President Trump and protect Beto O'Rourke.

Defendant Moore used his platform to cover up and deflect from the $12 million Walmart mass shooting victims' benefits fraud involving the El Paso Community Foundation, of which El Paso Matters is a controlled entity.

Defendant Moore engaged in a sustained pattern of political attacks and disinformation designed to influence public officials, interfere with ongoing criminal investigations, and protect individuals and entities connected to the criminal enterprise responsible for Richard Halliday's murder.

Defendant Moore, along with Aaron Montes and Angela Kocherga, further schemed to published defamatory and false allegations against Judge Roger Rodriguez, in order to further interfere with the investigation and silence the whistleblower.

Through his actions and omissions, Defendant Moore provided a "media shield" for the criminal enterprise, amplified attacks against the Halliday family and key whistleblowers (such as Judge Roger Rodriguez), and caused severe and ongoing emotional distress to the Gold Star family of Richard Halliday.

**31. Defendant: Thomas Cain (Director of Emergency Services (DES), Fort Bliss – Official Capacity and/or Individual Actions)**

CAUSES OF ACTION AGAINST THIS DEFENDANT

1. *42 U.S.C. § 1983* – Deprivation of Due Process, Equal Protection, and Right of Access to the Courts (acting under color of federal authority through obstruction).

65

2. *18 U.S.C. § 1962(c) & (d)* – RICO (Conducting and Conspiring to Conduct the Affairs of the Enterprise through a Pattern of Racketeering Activity, including obstruction of justice).

3. Wrongful Death and Survival Action (Texas law) – Proximately causing the death of SPC Richard Halliday through deliberate obstruction and protection of the criminal enterprise.

4. Obstruction of Justice *(18 U.S.C. § 1512)* – Witness tampering and narrative control.

5. Civil Conspiracy *(42 U.S.C. § 1983 and 18 U.S.C. § 371)* – Agreement with other named defendants to obstruct justice and protect the criminal enterprise.

6. Official Misconduct / Breach of Public Trust – Using DES authority to suppress evidence and protect compromised personnel.

7. First Amendment Retaliation – Participating in retaliation against the Halliday family for petitioning the government for redress.

SPECIFIC ACTIONS BY DEFENDANT CAIN THAT GIVE RISE TO LIABILITY

Director of Emergency Services (DES) at Fort Bliss: Defendant Cain served as the Director of Emergency Services (DES) for Fort Bliss during the critical period following Richard Halliday's disappearance and murder. In this capacity, he held direct authority over security, emergency response, and the preservation of crime scenes on the installation.

Confirmation of Security Compromise: Defendant Cain had direct knowledge and confirmed that security on Fort Bliss was compromised at the time of Richard Halliday's murder. His position placed him at the center of the command structure responsible for maintaining the integrity of the installation, yet he failed to act on this knowledge.

Corroboration of the Illegal Order to Renovate Building 2479: Defendant Cain corroborated the illegal order issued by then-Commanding General James P. Isenhower III to renovate the arms room in Building 2479 "at any expense" and without regard to proper protocol . This renovation, conducted without proper investigation or preservation of the crime scene, resulted in the destruction of critical forensic evidence—including physical evidence that could have identified Richard's murderers and the circumstances of his death. Despite his role as DES, Cain failed to intervene, escalate, or report this unlawful destruction of evidence.

Knowledge of the Crime Scene (Building 2479): Defendant Cain is documented as having knowledge that the arms room crime scene in Building 2479—where Richard Halliday was murdered—was kept a secret. The concealment of this crime scene on a U.S. military installation constituted a deliberate obstruction of justice designed to prevent the Halliday family and investigators from

discovering the truth about Richard's murder, allow the destruction of forensic evidence, and protect the criminal enterprise operating within the unit.

Corroboration of Remains Disposal: Defendant Cain corroborated that Richard Halliday's remains were deposited somewhere in the desert off-base, confirming foul play and the removal of evidence from the installation. Despite this knowledge, he participated in or failed to properly report or act upon the cover-up of the murder, thereby aiding the criminal enterprise.

Confirmation of Retaliatory Ban: Defendant Cain confirmed in writing that the ban against Judge Roger Rodriguez—a key whistleblower and witness in Richard Halliday's case—was retaliatory and connected to Richard Halliday's case. This ban was issued without proper investigation, without notice to Judge Rodriguez, without an opportunity to respond, and without corroborating evidence.

Deprivation of Constitutional Rights: Through the above actions and omissions, Defendant Cain deprived Richard Halliday and his family of their constitutional rights, including:

(a)     First Amendment Rights – Participating in retaliation against the Halliday family for petitioning the government for redress.

(b)     Fifth and Fourteenth Amendment Rights – Denying due process and equal protection by suppressing evidence and obstructing the investigation.

(c)     Right of Access to the Courts – Obstructing the investigation to prevent the Halliday family from obtaining justice and the return of their son's remains.

Knowing Participation in the RICO Enterprise: Defendant Cain, through his actions as DES, his knowledge of the crime scene concealment, and his confirmation of the retaliatory ban, knowingly conducted and conspired to conduct the affairs of the criminal enterprise through a pattern of racketeering activity that included obstruction of justice and official misconduct. His participation furthered the enterprise's objectives of silencing whistleblowers, protecting prime suspects, and preventing accountability for the murder of a U.S. Army soldier.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court to find that Plaintiffs have stated a claim upon which relief can be granted against each named Defendant as set forth above and permit plaintiffs to proceed with their claims against the named Defendants.


Respectfully submitted this 6th day of July, 2026.

/s/ Robert B. Halliday III

Robert B. Halliday III, Pro Se

103 McDade Ave. Greer SC. 29651

/s/ Patricia M. Halliday

Patricia M. Halliday, Pro Se

103 McDade Ave. Greer SC. 29651